A99A1796. SMITHSON v. PARKER.
(528 SE2d 886)

SMITH, Judge.
Lynda Parker brought suit against Susan Smithson, alleging breach of contract, fraud, and intentional infliction of emotional distress in connection with Smithson's sale to her of a wedding dress. Her complaint sought compensatory and punitive damages. Smithson answered, and the case was tried by a jury, which found in favor of Parker in the amount of $1,625.80 compensatory damages and

---

$10,000 punitive damages. Judgment was entered on the verdict, and Smithson filed this appeal, contending that the trial court erred in denying her motion for directed verdict and in its charge to the jury. We find no error, and we affirm.

The record shows that the parties held differing views of what transpired leading to this lawsuit and at trial each presented evidence supporting her version of the facts. It is undisputed that four weeks before her wedding, on August 24, Parker ordered a wedding dress from Smithson's shop, paying $901. The details of the transaction, however, and what transpired after that are in dispute. According to Parker, Smithson told her the dress she viewed was a sample that had been worn in a fashion show. She also said it could be ordered from Hong Kong in the proper size in three days. Because Parker needed a sample of the fabric to coordinate bridesmaids' dresses and flowers, Smithson cut a small swatch from the hem of the sample to give her. Several days later, she returned to the shop and borrowed the sample dress for a few hours so her hairdresser could see the neckline and coordinate her hairstyle for the wedding.

A few days after that, having given the small swatch to the florist, she again borrowed the sample dress so her seamstress could match fabric for the bridesmaids' dresses. On that occasion, the seamstress pointed out to her that the "sample" now had tags on it from a local department store. According to Parker, the tags had not been present when she tried the sample on and ordered the dress. When she returned the dress to the shop, she noticed a similar gown in the alteration area of the shop. When she questioned Smithson about the tags, Smithson's explanation was that the tags had been taken off the other gown to alter it after another customer bought it, and someone in the shop had replaced the tags on the wrong dress.

Although Parker had been promised the dress in three days, it did not come in until three days before her wedding. Parker testified that Smithson used various pretexts to prevent her from coming in for a fitting until the day before her wedding. The dress was not ready until two hours before the wedding, and although she wore the dress to her wedding, Parker and her seamstress testified that it did not fit properly, looked terrible, and "ruined" her wedding day. She paid for a professional to photograph the wedding but did not order any photographs because of the dress. When Parker returned from her wedding trip, she tried to return the dress, but Smithson would not accept telephone calls or registered letters.

Parker, the seamstress, and a friend of Parker's with experience working in retail and bridal fashions, all testified that the dress she wore to the wedding was not identical to the sample but was of inferior materials and workmanship. Parker testified that about two weeks before the wedding, she noticed the sample dress in the local

department store. She recognized it immediately as the sample from Smithson's shop. The hem was similarly dirty, and a small piece of fabric had been cut from the hem. She spoke to the manager of the department, and the dress was taken off the floor. A month after the wedding, Parker bought the dress from the department store to use for comparison purposes in this lawsuit, and the dress was entered into evidence at the trial, along with the dress purchased from Smithson's shop. Parker theorizes that Smithson showed her a more expensive dress but sold her a cheaper "knockoff," charging her full price. She further theorizes that Smithson kept her from noticing the substitution by refusing to allow her to view the dress until the day before her wedding, when it was too late for Parker to purchase a dress elsewhere.

Smithson, on the other hand, testified that Parker received what she bargained for and attempted to return the dress after it had been altered for her and after she wore it at her wedding and had no further use for it. Smithson testified that the dress Parker tried on before she bought was not a sample. It was simply a dress in a smaller size. She testified that when the dress arrived in Parker's size, she was present at the fitting, and Parker made no complaint about the dress being different from the sample. She denied keeping Parker from seeing the dress until the last minute and offered into evidence a charge slip for alterations dated several days before the wedding. She also denied that the dress Parker purchased from the department store was the dress that had originally been in her shop; she maintained that the one in her shop had been much smaller. That dress had been purchased by a customer. She explained the price discrepancy by indicating that a department store could buy and sell the same dress for less because of volume. She also denied cutting the small swatch from the hem.

1. Smithson contends the trial court erred in denying her motion for directed verdict. We cannot agree. A motion for directed verdict may be granted only when no conflict exists in the evidence on any material issue and the undisputed evidence demands the requested verdict. OCGA § 9-11-50 (a). Here, it is obvious that the evidence was in conflict on not one but several material issues. If any evidence supports the trial court's denial of a motion for directed verdict, this court may not disturb the jury's verdict. *Grindle v. Chastain*, 229 Ga. App. 386, 389 (2) (493 SE2d 714) (1997). Some evidence presented by Parker supported her claim that Smithson intentionally deceived her by substituting a lower quality dress for the one Parker ordered and preventing her from detecting the substitution until it was too late. The trial court therefore did not err in denying Smithson's motion for directed verdict. Indeed, the jury apparently believed Parker's testimony and that of her witnesses and rejected that of Smithson.

2. Smithson next contends the trial court erred in charging the jury. She argues that because Parker accepted the dress the day before her wedding, knowing of its flaws, the trial court should not have charged the jury on breach of contract or fraud. We disagree for several reasons.

First, Smithson has waived objection to the charge as given because she failed to except to the charge before the verdict. When asked if there were any exceptions, counsel for Smithson replied: "None, Your Honor." This reply constituted a waiver of objection.

> Except as otherwise provided in this Code section, in all civil cases, no party may complain of the giving or the failure to give an instruction to the jury unless he objects thereto before the jury returns its verdict, stating distinctly the matter to which he objects and the grounds of his objection.

OCGA § 5-5-24 (a); see *Moody v. Dykes*, 269 Ga. 217, 219-220 (3) (496 SE2d 907) (1998).

Second, the trial court's charge was a correct statement of the law on both subjects. If any evidence in a case supports giving a charge, it must be given. As indicated in Division 1, Parker presented evidence supporting both breach of contract and fraud. Although it was in conflict with evidence presented by Smithson, the trial court did not err in giving charges on these theories.

3. Smithson also maintains that the evidence did not support a jury charge on punitive damages. Once again, however, Smithson expressly waived any objection to the charge by failing to except, even when asked specifically.

Moreover, we concluded in Division 1 that sufficient evidence was presented to allow the jury to decide the issue of fraud. Punitive damages are not applicable to a claim for breach of contract. *Mikart, Inc. v. Marquez*, 211 Ga. App. 209, 212 (6) (438 SE2d 633) (1993). But punitive damages are awardable in tort actions in which the plaintiff proves by clear and convincing evidence that the defendant's actions demonstrated "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." OCGA § 51-12-5.1 (b). It is clear, therefore, that they may be awarded for fraud. *Davis v. Southern Exposition Mgmt. Co.*, 232 Ga. App. 773, 776 (4) (503 SE2d 649) (1998). Applying the "any evidence" standard, we conclude that the trial court did not err in submitting the punitive damages issue to the jury. *H & H Subs v. Lim*, 223 Ga. App. 656, 658 (1) (478 SE2d 632) (1996). The charge on punitive damages was therefore necessary.

4. Parker's motion to impose a penalty for frivolous appeal is denied.

*Judgment affirmed. Pope, P. J., and Ellington, J., concur. Miller, J., disqualified.*

DECIDED JANUARY 31, 2000 — 

*Varner, Stephens, Humphries & White, James T. White, Brendan J. McCarthy*, for appellant.

*Mozley, Finlayson & Loggins, R. Ann Grier, Melvin Drukman*, for appellee.