**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**May 4, 2012**

# In the Court of Appeals of Georgia

A12A0211. PRAINITO v. SMITH.

McFADDEN, Judge.

After the death of Zina Cachia, a dispute arose among her heirs regarding whether assets in a securities account and a certificate of deposit ("the accounts") were part of her estate. Cachia's grandson, Dean Prainito, had obtained sole possession of the assets in the accounts as a joint tenant with survivorship rights in the securities account and as the payable on death beneficiary of the certificate of deposit. On behalf of the estate, its Administrator CTA, Michael F. Smith, brought an action in superior court against Prainito, and a jury found that Prainito had exerted undue influence over Cachia and had engaged in actual fraud in connection with the accounts. The jury awarded the estate damages in the form of the amount of money that Cachia had put into the accounts and "all legal fees." (Emphasis omitted.) The

trial court entered a judgment on the verdict that included an attorney fee award of $40,000.

Prainito appeals from the trial court's entry of judgment on the jury verdict and its denial of his motion for new trial. He argues that he was entitled to a directed verdict on the undue influence and actual fraud claims, that the evidence did not support a jury charge on either claim or on punitive damages, and that the attorney fee award was improper. As detailed below, we find that there was evidence to support the jury's verdict on undue influence and actual fraud, that it thus was proper for the court to charge the jury on those claims, and that Prainito's claim of error regarding the punitive damages charge lacks merit. We find, however, that the evidence did not support the attorney fees award. Accordingly, we affirm the judgment except as to the award of attorney fees, which we reverse.

1. Prainito contends that the trial court erred in denying his motion for directed verdict on the claims of undue influence and fraud, arguing that the trial evidence on these claims was insufficient, but he fails to cite any supporting authority for this enumeration of error in his brief. See Ct. App. R. 25 (a) (3). Moreover, the record contains evidence supporting the jury's verdict. See *Parris Props. v. Nichols*, 305 Ga. App. 734, 735 (1) (700 SE2d 848) (2010) (standard of review on appeal from denial

2

of a motion for directed verdict is whether there is any evidence to support the jury's verdict).

Construed in the light most favorable to the estate, see id., the evidence showed that in May 1996, Cachia executed a will in which she left "all the money in [her] banks and [her] investments . . . to [her] five grandchildren" and directed Prainito and another grandchild to "see to it that all money will be divided equally" to five named grandchildren. (Misspellings omitted.) Cachia had a sixth grandchild from whom she was estranged, and who was not mentioned in the will. In a separate proceeding from this appeal, the probate court determined that the will was valid.

Also in 1996, Cachia moved from Florida to the Atlanta area, close to Prainito and another of her grandchildren. She stopped driving and depended upon Prainito to take her to the store, the bank, and on other errands. After her move, and especially following her 90th birthday, Cachia began to show signs of loneliness and depression, and frequently she talked with her grandchildren about wanting to die. She also repeatedly expressed to them the wish that her money be divided among them equally.

In 2004, Cachia opened and deposited funds into a securities account on which Prainito was listed with Cachia as a joint tenant with rights of survivorship. Prainito

drove Cachia to the bank to open this account and signed documents in connection therewith. The bank later became Wachovia, and on March 21, 2005, Cachia wrote a statement "to Wachovia Bank" that "the money on all [her] accounts will go to [her] 5 grandchildren," naming the same grandchildren listed in her will.

On July 1, 2005, Cachia purchased a certificate of deposit at SunTrust Bank, on which Prainito was listed as the beneficiary upon her death. One month later, on August 1, Cachia passed away at the age of 92. After her death, Prainito bragged to other family members that he had helped Cachia research certificates of deposit and make investments. When family members discussed Cachia's will, however, Prainito did not reveal his interests in the accounts and when questioned about them he acted irritated, became evasive, and later denied that the accounts existed.

(a) The trial court properly denied Prainito's motion for directed verdict on the undue influence claim. Generally, questions of undue influence are for the factfinder, *Mathis v. Hammond*, 268 Ga. 158, 160 (3) (486 SE2d 356) (1997), and undue influence may be shown by a broad range of circumstantial evidence. *Schaffer v. Fox*, 303 Ga. App. 584, 585 (1) (693 SE2d 852) (2010); *Horton v. Hendrix*, 291 Ga. App. 416, 420 (2) (a) (662 SE2d 227) (2008). "Where evidence is presented of a confidential relationship, the grantor being of weaker mentality and the grantee

4

occupying the dominant position, an issue of fact is raised as to undue influence." (Citations omitted.) *Fletcher v. Fletcher*, 242 Ga. 158, 160 (2) (249 SE2d 530) (1978). Here, evidence of the elderly Cachia's depression, loneliness, and increasing dependency upon Prainito on matters including investing and certificates of deposit allowed for a finding that the two had a confidential relationship, which is defined by OCGA § 23-2-58 to include a relationship "where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another." See *White v. Regions Bank*, 275 Ga. 38, 39-40 (1) (561 SE2d 806) (2002); *Mathis*, 268 Ga. at 160 (3). We find no error in the trial court's denial of the motion for directed verdict on the undue influence claim. *Mathis*, supra.

(b) Likewise, the trial court properly denied Prainito's motion for directed verdict on the actual fraud claim. "Actual fraud consists of any kind of artifice by which another is deceived." OCGA § 23-2-51 (b). The estate argued to the jury that Prainito committed actual fraud by misrepresenting to Cachia his intent to divide the money in the accounts between the five grandchildren upon her death. See OCGA § 23-2-52 (misrepresentation of a material fact, made willfully to deceive and acted on by opposite party, constitutes fraud). Prainito contends that there is no evidence he made any such representation. But while "[f]raud may not be presumed . . . , being in

5

itself subtle, slight circumstances may be sufficient to carry conviction of its existence." OCGA § 23-2-57; see *Durrence v. Durrence*, 224 Ga. 620, 623 (2) (163 SE2d 740) (1968). "Therefore circumstances, almost inconclusive if separately considered, may by their number and joint operation be sufficient to constitute proof." (Citation omitted.) *Lumpkin v. Deventer N. Am.*, 295 Ga. App. 312, 315 (1) (672 SE2d 405) (2008).

Such circumstances existed here. There was evidence in this case that Cachia intended for the money she had placed in the accounts to be divided between the five grandchildren identified in her will, notwithstanding that Prainito had been named joint tenant or beneficiary of the accounts. There also was evidence that Prainito had advised Cachia with regard to the accounts. And there was evidence that, upon Cachia's death, Prainito was evasive in response to the other grandchildren's questions about the accounts and attempted to deny their existence. This evidence allowed for the jury to find that Prainito misrepresented to Cachia that he would divide the money in the accounts among the grandchildren in accordance with her wishes. See *King v. Brown*, 280 Ga. 747, 748-749 (2) (b) (632 SE2d 638) (2006) (circumstantial evidence permitted inference that defendant had made alleged misrepresentation to decedent, despite defendant's denial of statement). This evidence

6

also allowed for findings that Prainito did not intend to fulfill this promise and that the promise induced Cachia to name him as the joint tenant and the beneficiary of the respective accounts. See *Lumpkin*, 295 Ga. App. at 315-316 (1). We find no error in the trial court's denial of the motion for directed verdict on the actual fraud claim.

2. Prainito contends that the trial court erred in charging the jury on actual fraud and undue influence. He argues that no evidence was presented at trial to support either cause of action. Again, Prainito cites no supporting authority for this enumeration of error. See Ct. App. R. 25 (a) (3). Furthermore, as detailed above in Division 1, there was evidence of both actual fraud and undue influence. Accordingly, the court did not err in charging the jury on these causes of action. See *Smithson v. Parker*, 242 Ga. App. 133, 136 (2) (528 SE2d 886) (2000) (charge must be given if any evidence in case supports the giving of it).

3. Although Prainito enumerates as error the trial court's charge to the jury on punitive damages, he makes no argument and cites no authority in support of this claim. See Ct. App. R. 25 (c) (2) (any enumeration of error which is not supported in the brief by citation of authority or argument may be deemed abandoned). Moreover, the record shows that he did not object to this charge at trial and that, notwithstanding

7

the charge, the jury did not award any punitive damages. We find no ground for reversal.

4. Although the jury was not charged on attorney fees, it awarded the estate "ALL Legal Fees." Over Prainito's objection, the trial court entered a judgment on this verdict in which it awarded, among other things, $40,000 in attorney fees. Prainito argues that the attorney fees award was illegal and that the trial court instead should have remitted the verdict to the jury with further instructions, stricken the illegal portions of the verdict, or granted him a new trial. The estate argues in response that the court did not err in entering judgment on the verdict because the estate sought attorney fees in its complaint, the jury's verdict reflected its desire to award attorney fees, the evidence supported an award of $40,000 in attorney fees under OCGA § 13-6-11, and the trial court was authorized to conform the jury's verdict to the evidence.

The evidence, however, did not support the $40,000 attorney fees award under OCGA § 13-6-11. That Code section provides: "The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith,

8

has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them."

We pretermit whether the jury was authorized to award fees under OCGA § 13-6-11 in this case despite the lack of a charge on them. *See Ring v. Williams*, 192 Ga. App. 329, 331 (3) (384 SE2d 914) (1989). We hold that the trial court erred in entering a judgment on the award because no evidence was presented of the actual costs of the estate's attorneys in prosecuting this action or the reasonableness of those costs. See *Sims v. GT Architecture Contractors Corp.*, 292 Ga. App. 94, 96 (1) (663 SE2d 797) (2008) (award of attorney fees under OCGA § 13-6-11 "cannot stand where the plaintiff fails to prove the actual costs of his attorneys and the reasonableness of those costs") (citation omitted). The record does not support the trial court's finding that "[t]he evidence before the jury regarding attorney[ ] fees was that $40,000 had been incurred by the Estate in attempting to recover the sums in the [accounts]," The estate administrator (whose law firm also represented the estate in the litigation) testified that he was "not certain" of the total amount of fees his firm had billed to the estate. He agreed that the total amount of fees was over $40,000, but he emphasized that these fees were "not all relative to this case. Don't leave that impression. There were other things that were done in this estate." In addition, the

estate presented no evidence of the reasonableness of the attorney fees incurred by the estate. Because the estate failed to prove the actual costs of the work performed by its attorneys in connection with this case (as opposed to the general administration of the estate) or the reasonableness of those costs, the award of attorney fees must be reversed. *Hughes v. Great S. Midway*, 265 Ga. 94, 95 (1) (454 SE2d 130) (1995).

*Judgment affirmed in part and reversed in part. Barnes, P. J., and Adams, J., concur.*