**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**September 29, 2014**

# In the Court of Appeals of Georgia

A14A1472. HAGAN v. KEYES.

BOGGS, Judge.

Jules Hagan appeals following a jury verdict in favor of Christopher Keyes on Keyes' complaint seeking damages for fraud, breach of contract, and unjust enrichment. Hagan asserts that the court erred in awarding Keyes damages on the breach of contract claim, denying his motion for a directed verdict on the fraud claim, and awarding Keyes attorney fees. Hagan also asserts that Keyes' unjust enrichment claims fails as a matter of law. For the following reasons, we affirm the entry of judgment on Keyes' claim for damages, but reverse the award of attorney fees for lack of sufficient evidence.

Viewed in the light most favorable to the verdict, the evidence showed that Billy Nelson was contacted by Hagan about purchasing certain property owned by

Bruce Townsend. When Keyes expressed to Nelson, who was his friend and neighbor, that he was "looking for some acreage to buy," Nelson told him about Townsend's property. Keyes asked Nelson if Hagan had a contract on the property, and if he would be "willing to sell the contract." Keyes told Nelson to inform Townsend that he would give him "a $100,000 upfront binder and that he would give [ ] Hagan $100,000 for the sale of the contract."

Hagan agreed to enter into the purchase agreement with Townsend and then to assign that agreement to Keyes for $100,000. Keyes testified that Nelson persuaded him not "to go down to the property" or talk to Townsend because "the deal would get screwed up." On May 14, 2007, Townsend and Hagan signed an agreement for the purchase of 70 acres for $700,000 (71 acres minus the 1 acre for Townsend's home) prepared by Keyes' attorney. Ten days later, Hagan assigned the agreement to Keyes.

After the assignment, Keyes and Hagan went to look at the property, and Keyes discovered from Townsend that a portion of it, the marshfront portion, had already been sold. Keyes then researched property records and discovered that six of Townsend's 70 acres, a fair amount of which "was right along the marsh that would grant [Keyes] access . . . to the river," were sold in 1999 and 2000. Keyes informed

2

Townsend that the portion of the property that had already been sold, and which he believed he would purchase under the assigned purchase agreement, had significant value, and that while he remained committed to the purchase, Townsend had "significantly damaged [his] position." When Keyes requested the return of his money from both Hagan and Townsend, Hagan told him, "He didn't have the money, 'Go ahead and sue me, . . . [n]othing is in my name anyways.'" Townsend told Keyes, "He ain't got it, you know, gone, spent, back taxes, whatever, spent it all."

Nelson testified that he was unaware that a portion of the 70 acres had been sold. Hagan testified that he was aware some of Townsend's property had been sold, but that he believed 70 acres remained and that the purchase was for the 70 acres "at [$]10,000 an acre." Townsend, however, testified that the total sales price was not based upon a certain price per acre, that he was aware at the time he signed the purchase agreement that he "didn't have 70 acres to sell," and that Hagan "also knew that." Townsend explained that he had informed the parties that "six acres [were] missing," that he had known Hagan "all [his] life," and that Hagan "knew that the acreage was missing. And I figured that there would be - - they had been out there doing some wetlands work . . ., so I figured we was in the process of getting everything legally done the way it should be done." Townsend explained further that

3

he was unaware of Keyes' agreement with Hagan to assign the purchase agreement and did not become aware of Keyes' involvement for "10 days to 2 weeks" after he signed the purchase agreement with Hagan.

When Townsend refused to return the $100,000 Keyes paid in earnest money through Hagan, Keyes sued Townsend for specific performance, or in the alternative the return of the $100,000, and claimed that Townsend committed fraud. Townsend filed a third-party complaint against Hagan alleging that Hagan failed to disclose to Keyes that six acres were not included in the sale. Hagan answered and asserted a counterclaim against Townsend seeking damages for breach of contract and fraud. Keyes then filed a complaint against Hagan, the third-party defendant, seeking damages for breach of contract, fraud, and unjust enrichment.

Following a trial on the claims asserted, a jury found in favor of Keyes and against both Hagan and Townsend "jointly and severally in the amount of: $200,000, in damages flowing from the contractual agreement . . . and, $12,000 in attorney's fees and the costs of litigation." It is from this verdict that Hagan appeals.[1]

1. Hagan asserts that Keyes' claim for unjust enrichment fails as a matter of law. But the verdict form reflects that the jury did not enter a verdict against Hagan

---

[1]Townsend is not a party to this appeal.

4

on Keyes' claim for "damages flowing from the theory of unjust enrichment." This claim of error is therefore without merit.

2. Hagan contends that the trial court erred in awarding damages on Keyes' breach of contract claim. The verdict form allowed the jury to decide whether to rule in favor of Hagan or Townsend, or to rule against them "jointly and severally" for "damages flowing from the contractual agreement," against Townsend individually for "damages flowing from the contractual agreement," or against Hagan individually for "damages flowing from the theory of unjust enrichment." The verdict form did not distinguish between Keyes' claims for breach of contract and fraud, and Hagan posed no objection to the form. "In the absence of a verdict form requiring the jury to specify how it found the defendants liable, the method by which a jury reaches a particular verdict is not a matter of which this Court can take judicial cognizance." (Citations and punctuation omitted.) *Bloodworth v. Bloodworth*, 277 Ga. App. 387, 389 (1) (b) (626 SE2d 589) (2006); see also *Esprit Log & Timber Frame Homes v. Wilcox*, 302 Ga. App. 550, 554-555 (3) (691 SE2d 344) (2010) (where verdict form did not specify which of several underlying causes of action formed basis for award, no showing of impermissible double recovery). We cannot decide whether the trial court erred in awarding damages for breach of contract because we have no verdict

5

before us showing that the jury did in fact find in favor Keyes under that theory. See *Wilcox*, supra.

3. Hagan argues that the trial court erred in denying his motion for a directed verdict on Keyes' fraud claim. Specifically, Hagan contends that there was no evidence of scienter or justifiable reliance. "[A] directed verdict is appropriate only if there is no conflict in the evidence as to any material issue and the evidence introduced, construed most favorably to the party opposing the motion, demands a particular verdict." (Citation, punctuation and footnote omitted.) *Goody Products, Inc. v. Dev. Auth.*, 320 Ga. App. 530, 534 (1) (740 SE2d 261) (2013). "The elements of fraud are (1) false representation by defendant; (2) scienter or knowledge of the alleged falsehood; (3) intent to induce the plaintiff to act or refrain from acting; (4) justifiable reliance by the plaintiff; and (5) damage to the plaintiff." (Citations and punctuation omitted.) *Nebo Ventures, LLC v. NovaPro Risk Solutions*, 324 Ga. App. 836, 838-839 (1) (752 SE2d 18) (2013).

Hagan argues that there was no evidence he had scienter - knowledge of the falsehood concerning the amount and type of property Townsend owed and could therefore sell to Keyes via Hagan's assignment of the purchase agreement. But to the contrary, there was some evidence Hagan was aware, prior to assigning the agreement

6

to Keyes, that Townsend had sold six acres and that some of that acreage was marshfront property.

Hagan also argues that Keyes cannot show justifiable reliance because he failed to perform any due diligence prior to purchasing the assignment to discover the number of acres Townsend owned and was therefore able to sell. "We have frequently cautioned that questions of fraud, the truth and materiality of representations made by a seller, and whether the buyer could have protected himself by the exercise of proper diligence are, except in plain and indisputable cases, questions for the jury." (Citations and punctuation omitted.) *Stephen A. Wheat Trust v. Sparks*, 325 Ga. App. 673, 676-677 (2) (754 SE2d 640) (2014). This principle would apply here to the agreement between Hagan and Keyes to assign the purchase agreement to Keyes in exchange for $100,000. Keyes testified that prior to the assignment, he had desired to visit the property and talk to Townsend, but that Nelson warned him such actions could affect the purchase deal between Hagan and Townsend. The fact that Keyes checked property records and discovered the problem after the assignment and before closing on the purchase does not mean that such inquiry was required as a matter of law prior to the assignment. It was for the jury to decide whether Keyes justifiably relied upon the purchase agreement Hagan assigned to him or whether he should have

7

made some further independent inquiry. See *Nebo Ventures*, supra, 324 Ga. App. at 842 (1) (d); see also *Akins v. Couch*, 271 Ga. 276, 279 (2) (b) (518 SE2d 674) (1999) ("[T]he location of information in public records does not necessarily defeat a claim of passive concealment."); *Cates v. Owens*, 87 Ga. App. 270, 275-276 (1) (73 SE2d 345) (1952) (previous knowledge of land and its boundaries did not preclude recovery for fraudulent misrepresentation).

Because there was some evidence to support a verdict against Hagan for fraud, we cannot say that the trial court erred in denying his motion for directed verdict. *Goody Products*, supra, 320 Ga. App. at 533-534 (1).

4. Hagan contends that the trial court erred in awarding attorney fees to Keyes because no evidence was presented as to the reasonableness of the fees or the amount of fees that were attributable to his prevailing claim. "The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." OCGA § 13-6-11. But "[a]n award of attorney fees is unauthorized if appellee failed to prove the actual costs of the attorney and the reasonableness of those costs." (Citations, punctuation and footnote

8

omitted.) *Cannon Air Transp. Svcs. v. Stevens Aviation*, 249 Ga. App. 514, 519 (6) (548 SE2d 495) (2001).

Keyes requested attorney fees in his complaint against Hagan, and presented evidence that he owed his attorney $12,000 in fees. But no evidence was presented regarding the reasonableness of those fees.[2] In the absence of some documentation or testimony "to show what constituted a reasonable attorney fee in light of the litigation history of the case," the evidence is insufficient to support the jury's verdict. *Smith v. Travis Pruitt and Assoc.*, 265 Ga. 347, 348 (2) (455 SE2d 586) (1995). The award of attorney fees must therefore be reversed. *Prainito v. Smith*, 315 Ga. App. 791, 795-796 (4) (728 SE2d 309) (2012).

*Judgment affirmed in part and reversed in part. Barnes, P. J., and Branch, J., concur.*

---

[2]We also note that the jury was not charged on the issue of attorney fees.