**FIRST DIVISION**
**DOYLE, C. J.,**
**PHIPPS, P. J, and BOGGS, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 17, 2015**

# In the Court of Appeals of Georgia

A15A1222. THE DAN J. SHEEHAN COMPANY v. FAIRLAWN   DO-061
    ON JONES CONDOMINIUM ASSOCIATION, INC., et al.

DOYLE, Chief Judge.

The Dan J. Sheehan Company ("Sheehan"), a renovation and construction company, sued The Fairlawn on Jones Condominium Association, Inc. ("COA") and The Fairlawn on Jones Homeowners' Association ("HOA"), seeking payment of a judgment Sheehan had obtained against the HOA for its failure to pay for work Sheehan had performed. Sheehan's complaint alleged three counts: successor liability of the COA based on corporate continuation theory (Count 1), successor liability based on fraudulent attempt to avoid liability (Count 2), and fraudulent transfer under the Uniform Fraudulent Transfers Act[1] ("UFTA") (Count 3). Sheehan also sought

---

[1] OCGA § 18-2-70 et seq. Effective July 1, 2015, this Act became known as the Uniform Voidable Transfers Act. See Ga. L. 2015, p. 996 § 4A-1/SB 65.

prejudgment interest, attorney fees, and punitive damages. All parties moved for summary judgment, and the trial court granted summary judgment in favor of the defendants on each count. Sheehan now appeals, contending that the trial court erred because the undisputed facts show that (1) the newly formed COA was a mere continuation of the HOA, (2) the COA's formation was a fraudulent attempt to avoid the HOA's liability, and (3) Sheehan is entitled to summary judgment. Because the trial court incorrectly applied the successor liability doctrine, we reverse in part and affirm in part.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[2]

The material facts are essentially undisputed, and the record shows that the HOA was the original entity organized as the association for the Fairlawn on Jones condominium, a four-building, fifteen-unit residential complex. . The HOA was

---

[2] (Citation omitted.) *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

created by articles of incorporation, governed by a board of directors, and comprised of the owners of the condominium units. The common areas of the condominium were jointly owned by the unit owners; the HOA did not own the real property. Each unit owner had voting rights and was required to pay dues and a proportionate share of the common expenses of the HOA.[3]

To address certain needs for repair, the HOA hired Sheehan to perform the work, which it did. After a dispute arose over payment for the work, Sheehan sued the HOA in 2009, seeking payment.[4]

With the litigation pending, in June 2012, the unit owners held an annual meeting of the HOA and voted to begin the process of amending and restating the condominium declaration and bylaws to form a new association (the COA) and make some minor changes to better conform with the Georgia Condominium Act,[5] such as adopting a plat and identifying parking spaces as common elements.

---

[3] The proportion of common expenses owed by an owner was determined according to the size of the owner's unit.

[4] The 2009 suit was a precursor to the present case, which arose in 2013.

[5] OCGA § 44-3-70 et seq.

In September 2012, the HOA moved to continue the pending October 2012 trial date, and the trial date was re-set to December 2012. On November 2, 2012, the Certificate of Incorporation for the new COA was filed with the Secretary of State, and on November 13, 2012, the HOA board members voted to amend the HOA budget so that it would cease operations on November 27, 2012. On November 27, 2012, less than a week before trial, the unit owners voted to adopt the Amended and Restated Declaration of Condominium Fairlawn on Jones ("Restated Declaration"). According to an affidavit by Robert Conway, who served as president of both the HOA and COA, the Restated Declaration "transferred responsibility for governing the condominium . . . to the [COA]." Sheehan apparently was not made aware of the transfer, and nothing about the COA was filed in the trial court.

On December 3, 2012, the trial began, the HOA participated, and the jury returned a verdict in favor of Sheehan in the amount of $122,159.95 plus $47,097.11 in attorney fees. On January, 30, 2013, a judgment was entered in favor of Sheehan and against the HOA in the amount of $169,257.06.

In October 2013, after the HOA and the COA refused to satisfy the judgment, Sheehan filed the present case against the HOA and COA. All parties conducted discovery and ultimately moved for summary judgment. Following a hearing, the trial

4

court denied Sheehan's motion and granted the motion filed by the HOA and COA. Sheehan now appeals.

1. Sheehan contends that the trial court erred by ruling that the COA was not a mere continuation of the HOA, and was therefore not subject to successor liability for the HOA's judgment. We conclude that, based on the undisputed facts, the COA was a mere continuation of the HOA.

Ordinarily, a successor entity does not assume the liabilities of its predecessor unless "(1) there is an agreement to assume liabilities; (2) the transaction is, in fact, a merger; (3) the transaction is a fraudulent attempt to avoid liabilities; or (4) the [successor] is a mere continuation of the predecessor corporation."[6] The latter of these circumstances refers to "the common law doctrine of corporate continuity[, which] applies where . . . *there is a substantial identity of ownership and a complete identity of the objects, assets, shareholders, and directors*."[7] The corporate continuity doctrine is one of equity.[8]

---

[6] *Bullington v. Union Tool Corp.*, 254 Ga. 283, 284 (328 SE2d 726) (1985).

[7] (Emphasis supplied.) *Davis v. Concord Commercial Corp.*, 209 Ga. App. 595, 597 (1) (434 SE2d 571) (1993).

[8] See *In Re: Acme Security, Inc.*, 484 B.R. 475, 487 (III) (B) (Bankr. N.D. Ga. 2012).

Here, after the COA was formed, it had the same purpose, same subject property, same board of directors, same officers, same voting members, same unit owners, same physical location, same registered office, and same authority to assess dues on the same people to pay for the same expenses. For practical purposes, nothing changed except the name of the association[9] – the subject property did not change, the corporate composition did not change, the voting membership did not change, and the dues assessment capacity did not change.

Despite this, the trial court ruled that Sheehan had failed to show that the HOA and COA have the same assets on the ground that "there was no transfer of assets between the entities because the [HOA] never owned any assets since all of the common elements and limited common elements are owned by the unit owners as tenants in common." But the doctrine of corporate continuity merely requires an "identity" of assets, and in the present factual context, the identity of assets is the same. As a formal matter, the COA and the HOA do not own real property, so this demonstrates no distinction between their "assets." Further, their ability to raise

_____

[9] The defendants argue that the COA was formed to more fully conform to the requirements in the Georgia Condominium Act. Nevertheless, those changes did not alter in any material way the voting members, unit owners, property governed, officers, board members, or assessment structure.

6

capital through their fee and assessment authority is identical – it comes from the same people who own the same condominium units and who are obligated to pay the same common expenses. In the face of this structure, the defendants point to no distinction between the COA and the HOA that reveals any material difference between the two entities' "assets" for purposes of corporate continuity.[10]

Further, we note that the COA operated on the same Georgia Power billing account held by the HOA, which remained in the HOA's name after the creation of the COA.[11] And the COA continued to pay premiums on a hazard and liability insurance policy held by the HOA, in the name of the HOA. Sheehan argues that these facts demonstrate corporate continuity, but the trial court dismissed their relevance, concluding that the utility account and insurance policy were not assets transferred to the COA, and instead liabilities. But even assuming this characterization is correct, it does not account for why the COA could informally and unilaterally choose to assume some HOA liabilities but not others.

---

[10] See generally *Oliver v. Oliver*, 118 Ga. 362, 369 (45 SE2d 232) (1903) ("Equity abhors mere names, and looks to the substance.").

[11] This was apparently done so the COA could avoid the requirement to pay a deposit or demonstrate creditworthiness when establishing a new account.

Based on the undisputed facts before us, we conclude that the doctrine of corporate continuity should apply here because the HOA and the COA have identical ownership structure, objects, assets, voting members, and directors.[12] Thus, the trial court erred by granting the defendants' motion for summary judgment as to the corporate continuation count and by denying Sheehan's motion for summary judgment as to this count.

2. Sheehan also argues that the trial court erred by granting summary judgment against it as to Count 2 based on an alleged fraudulent attempt to avoid liability,[13] and Count 3 alleging a fraudulent transfer under the UFTA.

---

[12] See *Pet Care Professional Center v. Bellsouth Advertising & Publishing Corp.*, 219 Ga. App. 117, 118-119 (1) (464 SE2d 249) (1995) (summary judgment appropriate where undisputed record establishes corporate continuity); *Davis v. Concord Commercial Corp.*, 209 Ga. App. 595, 597 (1) (434 SE2d 571) (1993); *Johnson-Battle Lumber Co. v. The Emanuel Lumber Co.*, 33 Ga. App. 517 (126 SE 861) (1925). See also *Sarl v. Kapla USA, LP*, Case No. 12-0230 *25 (III) (E) (S.D. Ga. 2013) ("An entity is but a continuance of the old entity by reason of such identity of name, objects, assets, and stockholders."), quoting *Ney-Copeland & Assoc., Inc. v. Tag Poly Bags, Inc.*, 154 Ga. App. 256, 257 (267 SE2d 862) (1980) ("Based on the identical nature of the prior partnership and the newly formed corporation, which constitute a single continuous business entity," the acts of the prior partnership could be attributed to the later formed corporation for Long Arm jurisdiction purposes); *Ed Peters Jewelry Co. v. C & J Jewelry Co.*, 124 F.3d 252, 268 (II) (B) (2) (d) (1st Cir. R.I. 1997) ("[E]quity is loath to elevate the form of the transfer over its substance, and deigns to inquire into its true nature.").

[13] See generally *Bullington*, 254 Ga. at 284.

With respect to Count 2, in light of our holding in Division 1, the trial court erred by concluding as a matter of law that the creation of the COA did not amount to a continuation of the HOA. As to the element of fraud, the record is mixed. For example, the timing of the creation of the COA, essentially on the eve of trial, could support an inference that it was done for the purpose of improperly avoiding liability, especially since Sheehan was not notified of the existence of the COA in time to address the issue at the initial trial, and in light of the HOA's option to conform with the Georgia Condominium Act without creating a new entity altogether. On the other hand, there is evidence in the record that the HOA had intended to address the switch sooner and that the COA formation was a good faith legal exercise. On this record, and in light of Sheehan's burden to prove fraudulent intent,[14] summary judgment is not appropriate in favor of either party on Count 2.

With respect to Count 3, the UFTA explicitly requires a "transfer" of an "asset," which is defined as certain forms of "property."[15] Because neither entity

---

[14] See generally *Mills v. Parker*, 253 Ga. App. 620, 624 (1) (a) (560 SE2d 42) (2002) (summary judgment inappropriate where factual question remains as to fraudulent intent); *In Re: Acme Security, Inc.*, 484 B.R. at 485-486 (III) (A) (discussing fraud element of attempt to avoid liabilities).

[15] OCGA §§ 18-2-71 (2); 18-2-73; 18-2-75.

9

owned property in this classic sense, the UFTA is not the appropriate vehicle for Sheehan's recovery, and the trial court correctly granted summary judgment in favor of the defendants as to Count 3.

3. Sheehan argues that the trial court erred by denying him summary judgment. In light of our rulings in Divisions 1 and 2, we agree as to Count 1 based on corporate continuation doctrine. Factual issues preclude summary judgment as to Count 2 (fraudulent attempt to avoid liability), and Count 3 (UFTA) was appropriately resolved as a matter of law in favor of the defendants.

*Judgment affirmed in part and reversed in part. Phipps, P. J., and Boggs, J., concur.*