**FIFTH DIVISION**
**REESE, P. J.,**
**MARKLE and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.***

**June 25, 2020**

# In the Court of Appeals of Georgia

A20A0641. WILSON v. WERNOWSKY et al.
A20A0642. PATINA DEVELOPMENT GROUP, LLC v. WERNOWSKY et al.
A20A0643. INLIFE BUSINESS DEVELOPMENT GROUP, LLC v. WERNOWSKY et al.
A20A0825. WERNOWSKY v. WILSON et al.

MARKLE, Judge.

John Wernowsky ("John") and Julie Wilson ("Wilson") were business partners in a company called Inlife Business Development, LLC ("InLife"). After John unexpectedly died, his widow, Debra Ann Wernowsky ("Debra Ann") sued Wilson, InLife, and Wilson's other company, Patina Development Group, LLC ("Patina"), seeking cash distributions owed to John from the operation of the two companies after his untimely death. This appeal arises from the jury's award of damages in favor of Debra Ann, as executor of John's estate and as trustee of the Family Trust of John

Wernoswky (collectively "Wernowsky"), and against defendants Wilson, InLife, and Patina (collectively "the defendants"). In Case Nos. A20A0641, A20A0642, and A20A0643, the defendants appeal from the trial court's denial of their motions to dismiss all claims and for judgment notwithstanding the verdict. In Case No. A20A0825, Wernowsky cross-appeals, contending that the trial court abused its discretion in excluding certain evidence relevant to her claim for attorney fees and expenses, and that it erred in granting Wilson's motion for summary judgment on her claim for punitive damages.[1]

Because several of the defendants' enumerations of error in Case Nos. A20A0641, A20A0642, and A20A0643 are not properly before the court, we must affirm the judgment as to those claims. In Case No. A20A0641, Wyoming law does not support Wernowsky's cause of action for breach of the covenant of good faith and fair dealing against Wilson, and we thus reverse that portion of the judgment. However, because there was sufficient evidence of Wernowsky's claim against

---

[1] In her notice of appeal, Wernowsky raised several allegations of error, including that the trial court erred in granting the defendants' motions for summary judgment as to the declaratory judgment and conversion claims. However, in her brief she focuses only on the trial court's exclusion of evidence relevant to her claims for attorney fees and expenses and punitive damages. Therefore, we will only address these issues. See Court of Appeals Rule 25 (c) (2).

Wilson for unjust enrichment, we affirm the judgment on this claim. In Case No. A20A0642, Wernowsky presented sufficient evidence to go to the jury in support of her claim of successor in interest liability against Patina, and thus we affirm the judgment as to this claim as well. In Case No. A20A0825, we vacate the jury's award of attorney fees in Wernowsky's favor and remand the case for further proceedings as to the appropriate amount of such fees. Finally, in light of our conclusion that there was no claim for breach of the covenant of good faith and fair dealing, Wernowsky's claim for punitive damages arising therefrom against Wilson is moot.

"[O]n appeal from the denial of a motion for a directed verdict or for j.n.o.v., we construe the evidence in the light most favorable to the party opposing the motion, and the standard of review is whether there is any evidence to support the jury's verdict. However, we review questions of law de novo, applying the plain legal error standard of review. (Citations and punctuation omitted.) *Southland Propane, Inc. v. McWhorter*, 312 Ga. App. 812, 813 (720 SE2d 270) (2011).

So viewed, the record shows that InLife is a multi-million dollar limited liability company formed under Wyoming law and, at its inception, consisted of two members, John and Wilson. These members owned the company equally and received yearly distributions from the business. The articles of organization for InLife provide

3

that Wyoming law applies to the relationship between the members and InLife's corporate affairs, and that the rights and activities of the company and its managers are to be governed by the Wyoming Limited Liability Company Act ("the Wyoming LLC Act") under Wyo. Stat. Ann. § 17-29-101 et seq.

When they formed the company, John and Wilson agreed to an InLife succession plan amongst themselves wherein each would purchase life insurance plans with their heirs as beneficiaries. Nevertheless, John ultimately was denied a life insurance policy.

In May 2016, John and his ten-year-old son were tragically killed in an accident. According to his last will and testament, Debra Ann was named the executor of John's estate. The will provided that all property not disposed of by specific bequest was to be held in the family trust for which Debra Ann was the trustee. After John's death, Debra Ann, as the executor of the estate and as trustee of the family trust, sought cash distributions from InLife in an amount reflecting John's transferable interest as a former member of the business. Wilson, as the manager of InLife, refused to pay Debra Ann the distributions and refused to provide any information pertaining to the ongoing business of InLife. Wilson subsequently formed a new business, Patina, which primarily provided the same services to some

4

of the same clients as that of InLife, employed the same people as InLife, and of which Wilson is a member and the manager.

Thereafter, Wernowsky filed suit against Wilson, Inlife, and Patina, asserting claims for conversion, violations of the provisions of the Wyoming LLC Act, breach of fiduciary duty, declaratory judgment, statutory right to information, accounting, breach of the covenant of good faith and fair dealing, and attorney fees and expenses of litigation. She also sought punitive damages against Wilson only.[2] Wilson, InLife, and Patina filed motions to dismiss, arguing, as is relevant to this appeal, that Wernowsky lacked standing to bring suit on behalf of the estate under either Georgia or Wyoming law.

While the motions to dismiss were pending, Wilson and InLife moved to deposit the sum of $278,794.80 into the trial court's registry in order to satisfy any obligations Wilson, InLife, or Patina had to Wernowsky. The trial court subsequently denied the motions to dismiss as to all claims except Wernowsky's breach of fiduciary duty claim, and granted the motion to deposit funds into the court's registry.

---

[2] Wernowsky initially filed suit against Wilson and InLife only, but later added Patina as a defendant. She subsequently amended her complaint a third time to assert that Patina is a successor to InLife and that the family trust is entitled to receive distributions from it as well.

Wernowsky subsequently withdrew the funds from the court's registry. The parties then filed cross-motions for summary judgment, which, following a hearing, the trial court granted in part and denied in part. The trial court granted InLife's and Patina's motions for summary judgment with respect to Wernowsky's claims for conversion and accounting. It granted Wilson's motion with respect to all claims except the claims for breach of the covenant of good faith and fair dealing, unjust enrichment, and attorney fees and expenses of litigation. The trial court also denied Wernowsky's motion for summary judgment as to whether Patina is a successor in interest to InLife.

The case proceeded to trial on the remaining claims against the defendants. At the close of Wernowsky's evidence, the defendants moved for directed verdict on all counts, which they later renewed to specifically address the alleged lack of evidence to support the claim for attorney fees against Wilson based on bad faith. The trial court denied the motion as to all claims except Wernowsky's claims for declaratory judgment and statutory right to information. The jury subsequently found in Wernowsky's favor, awarding: $1,986,201.92 against InLife and Patina for violations of the Wyoming LLC Act; $162,133.85 against Wilson for breach of the covenant of good faith and fair dealing, and $162,133.85 against her for unjust enrichment. The

6

jury also awarded $22,848.86 against Wilson for attorney fees and expenses of litigation, for a grand total of $347,116.56 against Wilson.

Thereafter, the trial court entered judgment in accordance with the jury's verdict, indicating that Wernowsky was to recover from InLife and Patina jointly and severally and that the damages recovered from Wilson were to include interest at a rate of 8.5 percent per annum from the date of the judgment. The trial court subsequently amended the judgment to reflect a revision in the amount of post-judgment interest, and indicated that the principal amount of the award shall accrue interest at a rate of 8.5 percent per annum nunc pro tunc from the date of the original judgment.

Wilson, InLife, and Patina then moved for judgment notwithstanding the verdict, which they subsequently amended to seek, in the alternative, a new trial. The trial court denied the motion in its entirety. The defendants now appeal. Wernowsky cross-appeals, alleging that the trial court abused its discretion in excluding certain evidence relevant to her claim for attorney fees and expenses, and that it erred in granting Wilson's motion for summary judgment on her punitive damages claim. For the reasons that follow, we affirm in part, reverse in part, and remand the case to the trial court with direction.

1. At the outset, we note that each of the defendants filed separate appellate briefs, but adopted portions of each other's arguments, specifically as to enumerations of error asserting that the trial court erred in denying their motions for j.n.o.v. For the sake of efficiency, we address those enumerations of error collectively. Based on our review of the record, however, several of the defendants' arguments before this Court were initially raised before the trial court in the motion for j.n.o.v., but not in their motion for directed verdict at trial. Because the defendants did not move for directed verdict on these issues, they could not raise them in a motion for j.n.o.v., and the issues are therefore waived. *Avion Systems, Inc. v. Bellomo*, 338 Ga. App, 141, 144 (2) (789 SE2d 374) (2016); *Southern Land Title, Inc. v North Ga. Title, Inc.*, 270 Ga. App. 4, 7 (2) (606 SE2d 43) (2004) ("It is patent, then, that the j.n.o.v. must be based on grounds raised in the motion for directed verdict initially, for it is in effect only a

new ruling on a renewed motion.") (citation omitted).[3] Accordingly, the below

enumerations of error have been waived and present nothing for us to review. Id.[4]

The defendants contend that the trial court erred in denying their motions to

dismiss based on the same arguments regarding the denial of their motions for j.n.o.v.

Specifically, the defendants argue that only the trust had standing to bring the claim

upon which Wernowsky prevailed at trial;[5] Wilson argues that the remedies of breach

---

[3] The final judgment in this case was entered on April 18, 2019. On August 23, 2019, the defendants filed an amendment to their initial motion for j.n.o.v., amending their prayer for relief to include, as an alternative, a motion for new trial. However, OCGA § 9-11-50 (b) provides that a motion for new trial may be prayed for in the alternative to a motion for j.n.o.v., but it must be filed within 30 days after entry of judgment. OCGA § 5-6-39 (b) further provides that there will be no extension of time for filing a motion for new trial or a j.n.o.v. Thus, the defendants' amendment is untimely, and we do not consider it. *Preferred Risk Ins. Co. v. Boykin*, 174 Ga. App. 269, 270-271 (1) (329 SE2d 900) (1985); see also *Leader Nat. Ins. Co. v. Martin*, 185 Ga. App. 27, 29 (1) (363 SE2d 281) (1987) ("since the 30-day period for filing a motion for new trial had already expired by the time [appellant] amended the motion to attack the validity of the directed verdict, the amendment itself cannot be considered a timely motion for new trial.")

[4] In relying on *Chrysler Group, LLC v. Walden*, 303 Ga. 358 (812 SE2d 244) (2018), the defendants urge this Court to review a number of the above enumerations of error under the plain error standard of review. However, plain error review, as contemplated under *Chrysler Group*, applies to the admission of evidence at trial. 303 Ga. at 369 (II) (B). The above arguments on appeal do not involve the admission of evidence at trial.

[5] Although this argument was not properly preserved for appeal, we note that Wernowsky is the real party in interest and the only plaintiff. Under OCGA § 9-11-17

9

of fiduciary duty and unjust enrichment were not applicable against her; and Patina further challenged whether either plaintiff had legal or equitable claims against it where it had no legal relationship with the estate or the trust, no contractual relationship with Debra Ann, and had not tortuously injured her. None of these arguments were raised in the motion for directed verdict, and thus they are not properly before this Court. *Southern Land Title*, 270 Ga. App. at 7 (2).

The defendants also argue that the portion of the judgment regarding pre-judgment interest was entered in error because the evidence of pre-judgment interest was improperly presented to the jury. However, this issue was not raised in the motion for directed verdict. As stated above, the defendants could not present this argument for the first time in their motion for j.n.o.v. As such, that issue, too, is not properly before this Court. *Southern Land Title,* 270 Ga. App. at 7 (2).

The defendants further argue that the trial court erred in allowing what they assert was a settled case to continue to trial after Wernowsky accepted and withdrew the funds from the trial court's registry in satisfaction of all her claims against them.

(a), "[e]very action shall be prosecuted in the name of the real party in interest. An *executor*, an administrator, a guardian, a bailee, a *trustee* of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may bring an action in his own name without joining with [her] the party for whose benefit the action is brought[.]" (emphasis supplied).

10

This argument is also not properly before this Court because it was not raised in the motion for directed verdict. *Southern Land Title*, 270 Ga. App. at 7 (2). Nevertheless, this argument is unavailing. In its order granting the defendants' request to deposit funds into the court's registry, the trial court specifically noted that Wernowsky's withdrawal of the funds would not prejudice her right to seek additional funds from the defendants at trial.

Finally, we are unpersuaded by the defendants' argument that the trial court should have set the final judgment aside rather than enter an amended final judgment. It is apparent from the trial court's order denying the motion for j.n.o.v. that the final judgment contained improper language regarding interest, and all parties agreed this language was in error. OCGA § 9-11-60 (g) provides that the trial court may, at any time, correct a clerical mistake in a judgment arising from oversight or omission. Here, the amended judgment did not alter the jury's verdict, but rather amended the language of the judgment to properly reflect an award for interest calculated on the principal amounts of the award. As such, the trial court properly exercised its inherent power to correct a clerical mistake. OCGA § 9-11-60 (g); see also *Windermere, Ltd. v. Bettes*, 211 Ga. App. 177, 180 (4) (438 SE2d 406) (1993) ("Clerical errors and irregularities in the judgment, if they appear on the face of the record, may be

11

corrected even after expiration of the term."). Thus, the defendants' argument in this regard is unavailing.

Accordingly, we address only those arguments preserved for our review. Moreover, it appears that Wilson and Patina conflate the arguments raised in their motions to dismiss with their general assertion that Wernowsky has no cause of action against them. As such, those arguments will also be addressed more fully below.

*A20A0641*

2. Wilson first asserts that Wernowsky failed to prove all of the necessary elements of a cause of action against her because: (a) she owed no duty of good faith and fair dealing to Wernowsky, and that even if Wernowsky had a right to enforce the covenant of good faith and fair dealing, she failed to introduce any evidence of proximate causation; and (b) the unjust enrichment claim against her fails because the parties' relationship was based on contract, and therefore Wernowsky is not entitled to a quasi-contractual remedy. Wilson further enumerates as error that the award of expenses and attorney fees against her must be set aside if any of the other enumerations are successful. We address each argument in turn.

(a) *Claim for breach of the covenant of good faith and fair dealing*

Wilson argues that she was entitled to a j.n.o.v. on Wernowsky's claim for breach of the covenant of good faith and fair dealing because no such duty is owed to a non-member of the company. A review of the relevant Wyoming statutes and case law reveals that the Wyoming LLC Act does not recognize a claim for breach of good faith and fair dealing between a member of a business and a transferee who has the status of a mere creditor. *Mantle v. North Star Energy & Constr. LLC*, 437 P3d 758, 804-805 (¶ 144) (Wyo. 2019). We, therefore, agree that Wilson did not owe such a duty to Wernowsky, and thus we must reverse that portion of the judgment against her.

Wyoming's LLC Act provides that the operating agreement governs the "rights and duties under this chapter of a person in the capacity of manager" and "to the extent the operating agreement does not provide . . . this chapter governs the matter." Wyo. Stat. § 17-29-110 (a) (ii); Wyo. Stat. § 17-29-110 (b). It is undisputed that there is no written operating agreement between John and Wilson. Under Wyo. Stat. § 17-29-602 (a) (vi) (A), upon the death of an individual member, the member becomes a dissociated member. When a member is dissociated, the member is treated as a transferee without management rights. Wyo. Stat. § 17-29-603 (a) (i), (iii) ("When a person is dissociated as a member of a limited liability company . . . [t]he person's

13

right to participate as a member in the management and conduct of the company's activities terminates . . . any transferable interest owned by the person immediately before dissociation in the person's capacity as a member is owned by the person solely as a transferee.").

Wernowsky is correct that under Wyo. Stat. § 17-29-502 (b), a transferee has the "right to receive, in accordance with the transfer, distributions to which the transferor would otherwise be entitled." However, the transferee is not entitled to participate in the management or conduct of the company's activities, nor is she entitled to access records or other information related to the company's activities. Wyo. Stat. § 17-29-502 (a) (iii). This is consistent with the bifurcation of ownership interests into economic rights and governance rights. Only economic rights are transferrable. *Lieberman v. Wyoming.Com LLC*, 11 P3d 353, 357 (Wyo. 2000) (decided under the previous Wyoming LLC Act). If a transferee is entitled to receive a distribution, the transferee has the "status of, and is entitled to all remedies available to, a creditor of the limited liability company with respect to the distribution." Wyo. Stat. § 17-29-404 (d). Thus, in regard to any distributions owed to Wernowsky, she would have the status of a creditor.

Although discussing the fiduciary duties a manager owes to a company, *Mantle* is instructive on the issue of whether a duty of good faith and fair dealing extends to creditors. 437 P3d 758, 804-805 (¶ 144) (Wyo. 2019). "The Wyoming LLC Act specifies that managers of a limited liability company owe duties of loyalty and care *to the company*, and is silent as to any extension of fiduciary duties to creditors." (Emphasis supplied.) *Mantle,* 437 P3d at 804 (¶ 144); see also *Acorn v. Moncecchi*, 386 P3d 739, 752 (¶ 58) (Wyo. 2016).

> As the Wyoming Supreme Court explained
>
> Wyoming's LLC Act specifies that managers of a limited liability company owe duties of loyalty and care *to the company*, and is silent as to any extension of fiduciary duties to creditors. Our emphasis on the differences between corporations and LLCs, our apparent caution to extend corporate common law to LLCs, and the lack of statutory language extending fiduciary duties to creditors, all constrain us from imposing fiduciary duties on an LLC to its creditors. Finally, refusing to recognize a fiduciary relationship between an LLC's managers and its creditors adheres to precedent concerning the creation of fiduciary relationships[.]

(Citations and punctuation omitted; emphasis supplied.) *Mantle,* 437 P3d at 804-805 (¶ 144).

15

Similarly, under Wyoming law, it is clear that a transferee, as a creditor, is not entitled to the same rights as that of a member, particularly in the absence of a contract. Wyo. Stat. § 17-29-409 (d) provides that

> [a] member in a member-managed limited liability company or a manager-managed limited liability company shall discharge the duties under this chapter or under the operating agreement and exercise any rights consistently with the contractual obligation of good faith and fair dealing."

The covenant of good faith and fair dealing "requires that a party's actions be consistent with the agreed common purpose and justified expectations of the other party. The purpose, intentions and expectations of the parties should be determined by considering the contract language and the course of dealings between and conduct of the parties." (Citation and punctuation omitted.) *Stevens v. Anesthesiology Consultants of Cheyenne, LLC*, 415 P3d 1270, 1282 (¶ 32) (Wyo. 2018). If there is no contract between the parties, then there can be no claim for a breach of an implied covenant of good faith based on a contract theory. *Scherer Constr., LLC v. Hedquist Constr., Inc.*, 18 P3d 645, 654 (¶ 20) (Wyo. 2001). Wernowsky has not identified a contract existing between John and Wilson.

16

Accordingly, it is clear that under Wyoming law Wilson did not owe a duty of good faith and fair dealing to Wernowsky as a creditor. Thus, we must reverse the judgment against Wilson on this claim. Because we reverse on this ground, we need not address the remaining arguments as to this claim.

(b) *Claim for unjust enrichment*

Wilson also argues that the trial court erred in denying her motion for j.n.o.v. on Wernowsky's unjust enrichment claim because the relationship of the parties is based on contract; and therefore, Wernowsky is not entitled to a quasi-contractual remedy. Wilson further asserts that the Wyoming LLC Act is the operating agreement between John and Wilson, and, therefore, Wyo. Stat. Ann. § 17-29-406 is the exclusive remedy for improper distributions from InLife and Patina. We disagree.

Wyo. Stat. Ann. § 17-29-405 describes the circumstances under which distributions paid by a limited liability company are improper to the extent they would be a detriment to the company. And, Wyo. Stat. Ann. § 17-29-406 (c) addresses liability for improper distributions, and indicates that a person who receives a distribution, knowing that it was made in violation of Wyo. Stat. Ann. § 17-29-405, is personally liable to the limited liability company to the extent that the distribution exceeded the amount allowable under the statute. However, pretermitting whether the

17

Wyoming LLC Act constitutes a contract between John and Wilson, these statutes, as relied on by Wilson, are inapplicable here because Wernowsky's claim is not one for improper distributions made to the detriment of the company, but rather one for money had and received.[6]

> An action for money had and received is founded upon the equitable principle that no one ought to unjustly enrich himself at the expense of another, and is maintainable in all cases where one has received money under such circumstances that in equity and good conscience he ought not to retain it.

(Citation omitted.) *Vernon v. Assurance Forensic Accounting, LLC*, 333 Ga. App. 377, 388 (2) (774 SE2d 197) (2015); see also *Nat. City Bank of Rome v. Buskin*, 175 Ga. App. 103, 107 (6) (332 SE2d 678) (1985) ("An action for money had and received is merely one form of action to recover damages based on unjust enrichment.")

A claim for money had and received contains the following elements: "a person has received money of the other that in equity and good conscience he should not be

---

[6] Although InLife was formed under Wyoming law and was governed under the Wyoming LLC Act, Wernowsky's remaining claims were asserted under Georgia law; thus they are so evaluated here. Wyo. Stat. Ann. §§ 17-29-101 et seq., 17-29-404 (a), and 17-29-502 (b).

permitted to keep; demand for repayment has been made; and the demand was refused." (Citation omitted.) *Fernandez v. WebSingularity, Inc.*, 299 Ga. App. 11, 13 (2) (681 SE2d 717) (2009).

Here, a review of Wernowsky's third amended complaint shows that her claim for unjust enrichment against Wilson is premised on Wernowsky's assertion that because Wilson received distributions from InLife and Patina that are twice the amount she is entitled to, Wilson was unjustly enriched to Wernowsky's detriment. As such, Wernowsky does not make a claim for improper distributions made to the detriment of the *company*, but rather that distributions made from the company to Wilson should have been shared equally with John's estate. Moreover, the allegations in the complaint state that Wernowsky demanded these funds from Wilson and was refused. This allegation states a claim for money had and received.

According to Wernowsky, John and Wilson had agreed that if anything happened to either of them, the remaining business partner would conduct a 50/50 split of the business and take care of the other partner's family. Wilson contends that she and John had an oral agreement that, if one of them died, that person's interest in InLife would extinguish, his/her family would receive nothing, and the remaining member could choose to continue the business.

19

At trial, Wilson confirmed that both she and John were 50/50 owners of InLife, that they were both managers, and that Wernowsky claimed an interest in InLife following her husband's passing. Wilson admitted that the sum of $278,794.80, which was tendered into the registry of the court, was to constitute all that John was entitled to receive from InLife, and that John was not entitled to any additional funds because his ownership in the business ceased upon his death. She further admitted that InLife was still in active business and had two clients from which annual revenues would accrue in the amount of $1.4 million annually in commission from retail sales, and that she refused to give Wernowsky any additional compensation from InLife, Patina, or herself personally.

On the other hand, Wernowsky presented evidence, through her expert witness's evaluation of InLife's general ledgers, that the total distributions that John and Wilson received from the business during the relevant time period was $2,290,605.96, and that John was entitled to half of that amount.[7] In addition, the expert deduced that John was owed distributions in the amount of $1,119,693.74 from Patina. As such, Wernowsky presented evidence from which the jury could infer that

_____

[7] The expert further testified that the funds Wernowsky withdrew from the trial court's registry was deducted from John's one-half share, leaving a balance of $866,508.18.

20

John was entitled to further distributions, which Wilson refused to give to Wernowsky.

The evidence, as summarized above, was sufficient to support the jury's verdict that Wilson was liable to Wernowsky under a claim for money had and received. Accordingly, the trial court properly denied the motion for j.n.o.v. on this ground.

(c) *Award of expenses and attorney fees*

Although Wilson asserts this claim as an enumeration of error, she offers no argument or citation to authority in support thereof. Nevertheless, because we affirm the trial court's denial of the motion for j.n.o.v. as to Wernowsky's claim for unjust enrichment, Wernowsky's claim for expenses and attorney fees was viable. *William Goldberg & Co., Inc. v. Cohen*, 219 Ga. App. 628, 635 (4) (466 SE2d 872) (1995).

### Case No. A20A0642

3. Patina argues that Wernowsky has no cause of action against it for InLife's debts under a successor in interest theory because any claim against Patina must derive from a contractual relationship between John and InLife, and because InLife remains in business and was not succeeded by Patina. Patina further argues that

21

InLife is a separate legal entity that does not own any rights to profits, including future profits, earned by Patina.[8] We disagree.

In Georgia, successor liability is recognized when

> (1) there is an agreement to assume liabilities; (2) the transaction is, in fact, a merger; (3) the transaction is a fraudulent attempt to avoid liabilities; or (4) the successor is a mere continuation of the predecessor corporation. The latter of these circumstances refers to the common law doctrine of corporate continuity, which applies where there is a substantial identity of ownership and a complete identity of the objects,

---

[8] Patina has failed to identify how these arguments were raised or ruled on by the trial court such that they are preserved for appellate review. It appears these arguments were raised in Patina's motion for summary judgment, and once the case proceeded to trial, these arguments would be rendered moot. *Certain Underwriters at Lloyd's of London v. Rucker Constr., Inc.*, 285 Ga. App. 844, 845 (1) (648 SE2d 170) (2007). However, Patina raised the issue of its successor in interest liability during the motion for directed verdict. The trial court precluded it from arguing the issue, finding that any argument would be improper on a motion for directed verdict because successor liability was not a claim but rather went to the issue of damages. Patina argued this issue again in its motion for j.n.o.v., but the trial court indicated in its order denying the motion for j.n.o.v. that Patina failed to argue this issue at trial on its motion for directed verdict, and therefore it could not be considered in its motion for j.n.o.v. Pretermitting whether the trial court properly precluded Patina from arguing the issue at trial during its motion for directed verdict, we will consider Patina's contention that the trial court erred in denying its motion for j.n.o.v. to the extent the same arguments were asserted in the motion for summary judgment and the issue was raised again during the motion for directed verdict. *Ameris Bank v. Alliance Inv. & Mgmt. Co., LLC*, 321 Ga. App. 228, 230-231 (1) (739 SE2d 481) (2013) (bank did not waive appellate review of issues raised on directed verdict at trial that were also raised in its motion for summary judgment).

22

assets, shareholders, and directors. The corporate continuity doctrine is one of equity.

(Citations, punctuation, and emphasis omitted.) *Dan J. Sheeran Co. v. Fairlawn on Jones Condo. Assn., Inc.*, 334 Ga. App. 595, 597 (1) (780 SE2d 35) (2015); see also *First Support Svcs., Inc. v. Trevino*, 288 Ga. App. 850, 853 (2) (655 SE2d 657) (2007) ("To establish that the new company is but a continuation of the old company and liable for its debts and obligations, the new corporation must have the same 'objects, assets, and stockholders.'") (citation omitted). Ownership structure is not determinative of the issue of successorship. *Ney-Copeland & Assoc., Inc. v. Tag Poly Bags, Inc.*, 154 Ga. App. 256 (267 SE2d 862) (1980). Instead, "[i]n Georgia, the common law continuation theory has been applied where there was *some* identity of ownership." (Citation omitted; emphasis in original.) *Pet Care Professional Center, Inc. v. Bellsouth Advertising and Pub. Corp.*, 219 Ga. App. 117, 118 (1) (464 SE2d 249) (1995).[9]

---

[9] Patina's reliance on Wyo. Stat. Ann. § 17-29-104, *Greenhunter Energy, Inc. v. W. Ecosystems Tech., Inc.,* 337 P3d 454 (Wyo. 2014), and *Jaycee Land & Livestock v. Flahive*, 46 P3d 323, 325 (Wyo. 2002), to support its argument that successor liability does not apply here is unavailing because Wernowsky's claims are asserted under Georgia law.

At trial, the jury heard evidence of two of the above prongs– fraudulent attempt to avoid liability and mere continuation. Wilson testified that she is a member of both InLife and Patina, and that Patina is involved in the same work as InLife– providing sales, marketing and brokerage services. She testified that both companies used the same brokers, and they have the same employees. Wilson also testified that the businesses have the same assets, and she confirmed bills of sale showing assets she purchased from InLife and then sold to Patina the very next day. The businesses also have the same clients. Additionally, Wilson testified that she formed Patina in October of 2016 after learning that Wernowsky was claiming an interest in InLife, and that, once she closed InLife, she invited all of its clients to do business with Patina.[10] Wilson further admitted that she never told Wernowsky that she had formed Patina and was soliciting InLife's clients to move their business to Patina.

Moreover, one employee, who worked for both InLife and Patina, testified that he had the same job responsibilities at Patina as he did while employed at InLife. He

[10] Notably, Wilson admitted that all but two of InLife's clients refused to do business with Patina because they were aware Wernowsky had asserted an interest in InLife and they feared the legal implications of leaving InLife. Consequently, these two clients are the only remaining clients of InLife. Also, in her deposition testimony, Wilson stated that InLife ceased doing business in September of 2016 and that she formed Patina in August of 2016.

also testified that Wilson stated to him and other employees of InLife that she formed Patina because there were legal issues involving the use of the name, but that the businesses "were essentially the same . . . we had the same clients, we sold to the same customers, we produced the same reports, we had everything but the same name basically." He further testified that Wilson, essentially, replaced John with someone else when she formed Patina. This evidence was sufficient to submit the claim to the jury for its determination as to Patina's liability under Wernowsky's successor in interest theory. *Dan J. Sheeran Co.*, 334 Ga. App. at 597 (1). As such, the trial court properly denied Patina's motion for j.n.o.v. as to this issue.

### Case No. A20A0825

4. In her cross-appeal, Wernowsky argues that the trial court erred in excluding from evidence an exhibit showing her legal fees and expenses, which would have aided the jury in their determination of the appropriate amount of fees under OCGA § 13-6-11. Specifically, she argues that fee separation is not required where there is intertwining of issues on both successful and unsuccessful claims in an action, or if it proves too difficult to do so. She also argues that the trial court should not have required that her expert witness exhibit be redacted to exclude the expert's work on the valuation of the claims against InLife and Patina for violation of the Wyoming

25

LLC Act. We agree that the trial court abused its discretion in excluding evidence of Wernowsky's legal fees and expenses, and we must remand the case for further proceedings as to the appropriate amount of these fees. However, the trial court did not abuse its discretion in admitting the redacted exhibit showing Wernowsky's expert witness fees.

"A trial court retains broad discretion in determining whether to admit or exclude evidence, and an appellate court generally will not interfere with that discretion absent abuse." (Citation omitted.) *Landry v. Walsh*, 342 Ga. App. 283, 284 (1) (801 SE2d 553) (2017). "Although this standard of review is deferential, it is not toothless. An abuse of discretion occurs where a ruling is unsupported by any evidence of record or where that ruling misstates or misapplies the relevant law." (Citations and punctuation omitted.) *Eagle Jets, LLC v. Atlanta Jet, Inc.*, 347 Ga. App. 567, 576 (2) (c) (820 SE2d 197) (2018).

Expenses of litigation generally are not allowed as a part of the damages, except where the plaintiff has specially plead them, and a jury may allow them where the defendant has acted in bad faith, been stubbornly litigious, or caused the plaintiff unnecessary trouble and expense. OCGA § 13-6-11. "The issue of attorney fees under OCGA § 13-6-11 is a question for the jury, and an award will be upheld if any

26

evidence is presented to support the award. (Citation omitted.) *Premier Cabinets, Inc. v. Bulat*, 261 Ga. App. 578, 582 (5) (583 SE2d 235) (2003). In order to support the jury's verdict of attorney fees under OCGA § 13-6-11, there must be some evidence presented to it to show what constituted reasonable fees of litigation. *Hagan v. Keyes*, 329 Ga. App. 178, 182 (4) (764 SE2d 423) (2014). And, where a plaintiff is awarded attorney fees under OCGA § 13-6-11, such an award must be apportioned to those attorney fees attributable to claims on which the plaintiff prevailed. *Monterrey Mexican Restaurant of Wise, Inc. v. Leon*, 282 Ga. App. 439, 452 (5) (d) (638 SE2d 879) (2006), overruled on other grounds, *Temple v. Hillegass*, 344 Ga. App. 454, 455 (810 SE2d 625) (2018).

However, Georgia law recognizes an exception to the general rule that the party seeking fees bears the burden of proof and must segregate out the hours that are recoverable from those that are not. "If the trial court finds that the various claims are so similar that it would be too difficult to separate the hours spent on each, the party entitled to fees is not required to allocate his hours." (Citation and punctuation omitted.) *Eagle Jets*, 347 Ga. App. at 574-575 (2) (b); see also *Krayev v. Johnson*, 327 Ga. App. 213, 223 (3) (757 SE2d 872) (2014).

Here, it is apparent that Wernowsky's counsel attempted to allocate the fees and expenses as displayed in the exhibit as far as was practicable, and that she was prepared to state in her place the reasonableness of those fees and to show how they were allocated in an effort to aid the jury in making a determination on the expenses of litigation. It is further apparent that all parties agreed that there could be no claim against Wilson for attorney fees and expenses unless the jury first found in favor of Wernowsky on her claims against InLife and Patina for violation of the Wyoming LLC Act. Wernowsky's counsel went on to state how these fees were allocated, and the defendants' counsel could have cross-examined her on this issue but declined to do so. Moreover, the trial court, in refusing to admit the exhibit, recognized the difficulty in segregating fees and expenses in the case. This acknowledgment supports a finding that the claims against all defendants in this case were "so 'intertwined' that work performed in connection with other claims was 'necessary as well' for the claim on which fees were allowed." (Punctuation omitted.) *Eagle Jets*, 347 Ga. App. at 575 (2) (b). As such, the trial court abused its discretion in excluding this evidence from the jury.

Accordingly, we vacate that portion of the jury's award for attorney fees and expenses against Wilson and remand the case to the trial court to conduct further proceedings on the amount of fees and expenses for which Wernowsky may recover.[11]

As for Wernowsky's claim that the trial court erred in ordering that the exhibit be further redacted to remove fees for the expert's work on the valuation of the companies, this argument is unavailing. A review of the record shows that the trial court ordered the exhibit to be redacted to reflect only the entries relevant to Wernowsky's bad faith claim against Wilson. However, counsel stated earlier that she had removed all entries from the exhibit related to the valuation claim because "we obviously did not pursue that line of argument in the case" and "we're not seeking it in the case." Pretermitting whether such entries should have been redacted from the exhibit, counsel acquiesced to the trial court's ruling on this issue, and she cannot now be heard to complain. *Bruno v. Evans*, 200 Ga. App. 437, 440 (3) (a) (408 SE2d

---

[11] We have consistently held that when a party seeking attorney fees under OCGA § 13-6-11 fails to present an essential element of proof, the award is reversed. See *Hagan v. Keyes*, 329 Ga. App. at 182 (4); see also *Hughes v. Great Southern Midway, Inc.*, 365 Ga. 94, 95 (1) (454 SE2d 130) (1995); *Prainito v. Smith*, 315 Ga. App. 791, 796 (4) (728 SE2d 309) (2012). Here, however, the trial court's refusal to allow counsel an opportunity to present to the jury evidence of fee allocation compels us to vacate the fee award and remand the case to the trial court for further proceedings. *Eagle Jets*, 347 Ga. App. at 577 (2) (c).

458) (1991); see also *Cousin v. Tubbs*, 353 Ga. App. 873, 877 (2) (840 SE2d 85) (2020). Accordingly, Wernoswky's claim fails on this point.

5. Finally, Wernowsky argues that the trial court erred in granting Wilson's summary judgment motion on Wernowsky's claim for punitive damages because that claim was premised on Wernowsky's remaining tort claim for Wilson's breach of the covenant of good faith and fair dealing. However, given our conclusion in Division 2 (a) that we must reverse the jury's verdict on the claim for breach of the covenant of good faith and fair dealing, which was the only remaining tort claim, this enumeration of error is moot.

In sum, we affirm the trial court's judgment as to the defendants' enumerations of error that were not preserved for appeal in Case Nos. A20A0641, A20A0642, and A20A0643. In case No. A20A0641, because Wyoming law does not support Wernowsky's cause of action for breach of the covenant of good faith and fair dealing against Wilson, we reverse that portion of the judgment. We affirm the judgment with respect to Wernowsky's claim against Wilson for unjust enrichment. We further affirm the judgment as to Wernowsky's claim for successor in interest liability against Patina in case No. A20A0642. Finally, in case No. A20A0825, we vacate the jury's award in favor of Wernowsky on her claim for attorney fees and expenses against

Wilson, and remand the case for further proceedings consistent with this opinion. Wernowsky's claim for punitive damages against Wilson is moot.

*Judgment affirmed in Case Nos. A20A0642 and A20A0643. Judgment affirmed in part and reversed in part in Case No. A20A0641. Judgment affirmed in part, vacated in part, and remanded with direction in Case No. A20A0825. Reese, P. J., and Colvin, J., concur.*