## A97A0174. RICE v. THE STATE.
(487 SE2d 517)

BEASLEY, Judge.

Rice was a volunteer and then a hired police officer with the City of Baldwin. Together with Police Chief Jarrell and fellow officers Umberhandt, Wiley, and Ivie, he was indicted for a RICO Act violation based upon over 100 instances of appropriating City property. OCGA § 16-14-4. The property taken was cash that had been paid for traffic fines and associated probation and late fees.

Rice contended the City did not provide uniforms or equipment for its officers and that Jarrell had told the officers that probation and late fees could be kept by the officers who put forth the effort to collect them in order to defray the costs of items necessary for their jobs and as an incentive to spur the collection of fines. He was con-

victed only of the lesser included offense of theft by taking by an officer or employee of a government institution in breach of his duties. (OCGA §§ 16-8-2; 16-8-12 (a) (2)).

1. Rice contends the court erred in excluding him from a hearing in which the court addressed issues concerning a possible conflict of interest caused by the fact that Rice and Wiley had retained the same attorney, Butterworth. Wiley's separate trial occurred prior to Rice's. Rice also contends that Butterworth's dual representation produced ineffective assistance of counsel but we need not address that issue.

Immediately prior to Wiley's trial, the State informed the court that Butterworth was representing both Wiley and Rice, that the State intended to introduce evidence of each defendant's incriminating statements against the other, and that it perceived Butterworth had a conflict of interest. As the court would also be conducting a *Jackson-Denno* hearing, Butterworth invoked the rule of sequestration for all witnesses who might be called either for the motions or for trial. Although the State noted to the court that Rice was a party whose interests might be affected by the hearing on dual representation, the court sequestered him as well, stating: "We can talk to him . . . if and when the time comes."

At the hearing, the State suggested that the court follow the Supreme Court of Georgia's direction that "where co-indictees or co-conspirators are represented by the same attorney or firm, trial judges should point out to the defendants that joint representation may create a conflict of interest and determine whether all such defendants agree to joint representation." (Emphasis omitted.) *Dean v. State*, 247 Ga. 724, 725, n. 1 (279 SE2d 217) (1981). Butterworth then produced a document styled "Agreement" signed by himself, Wiley, and Rice four days before Wiley's trial. It recited that the parties had discussed the possibility of a conflict of interest, that they "voluntarily, knowingly and intentionally agree" that no conflict existed, that they knew of none that would develop, and that if any did develop, "all parties do hereby waive, forgive and dismiss any complaint of any nature against any person(s) (their agents or assigns) now a party to this Agreement." The agreement did not expressly anticipate the conflict which did arise when, according to the State's attorney, each client was to testify against the other. Their counsel was so notified several weeks before the agreement was signed.

The court did not inform Wiley of the possible conflicts inherent in dual representation and did not inquire of Wiley if he understood the agreement and voluntarily signed it. The court ruled that the agreement constituted a waiver of any conflict and satisfied the court's responsibility under *Dean* to determine whether the defend-

ants agreed to the joint representation. Butterworth suggested that the court bring Rice into the courtroom and review the situation with him but the court ruled the agreement was as binding upon Rice as upon Wiley and no such action was necessary.

At Wiley's trial, Rice was called by the State and testified that the statements he had made to the GBI investigators were not true but were the product of confusion and an overbearing interrogation. He testified that he was "probably lying" when he told the GBI investigators he had received money from Wiley. This statement, and other portions of his testimony from Wiley's trial, were used to impeach him when he testified in his own trial.[1]

"It is the legal right of a person accused of crime in this State to be present at all stages of his trial." *Wilson v. State*, 212 Ga. 73, 74 (90 SE2d 557) (1955). Such right is derived from the provision now found at Art. I, Sec. I, Par. XII of the Georgia Constitution. Id. This right is separate from, and in addition to, the right of confrontation afforded by Art. I, Sec. I, Par. XIV, of the Georgia Constitution and the Sixth and Fourteenth Amendments to the Constitution of the United States. See *Goodroe v. State*, 224 Ga. App. 378, 379-381 (1) (480 SE2d 378) (1997); see also *Perry v. State*, 216 Ga. App. 749, 752 (456 SE2d 89) (1995) (Beasley, C. J., concurring specially).

The State contends Rice had no right to be present when the court addressed the potential conflict as it arose in a hearing in Wiley's case, while the court was convened the day of that trial. The fact that there were separate trials and docket numbers, and that this transpired in Wiley's case, is not dispositive of Rice's claim. Consideration of Butterworth's dual representation of Wiley and Rice necessarily affected both defendants. The hearing was the court's only inquiry into the matter and the court considered its decision as binding upon Rice, who was absent, as it was upon Wiley. Under these circumstances, we cannot conclude it was merely a portion of Wiley's trial which Rice had no right to attend. The hearing constituted a portion of the proceedings against him also.

Further, the hearing was a "critical stage of the proceedings" such that his right to be present was absolute. See *Goodroe*, supra at 380. It affected the fundamental right to independent counsel, and the court was obligated to assure the validity of the signed waiver. "[T]rial courts, when alerted by objection from one of the parties, have an independent duty to ensure that criminal defendants receive a trial that is fair and does not contravene the Sixth Amendment." *Wheat v. United States*, 486 U. S. 153, 161 (108 SC 1692, 100 LE2d

---

[1] Rice claims Butterworth was ineffective because he allowed Rice to testify at Wiley's trial.

140) (1988). See also *Holloway v. Arkansas*, 435 U. S. 475, 484-487 (98 SC 1173, 55 LE2d 426) (1978). As pointed out in *Dean*, supra at 725, "[t]he constitutional infirmities found in multiple representation of co-defendants may violate the sixth amendment or the due process clause. . . ." The same is true of Paragraph XIV of Georgia's Bill of Rights, as multiple representation implicates the right to effective assistance of counsel. See *Tarwater v. State*, 259 Ga. 516, 518 (383 SE2d 883) (1989); *White v. State*, 216 Ga. App. 583 (1) (455 SE2d 117) (1995); *Brinson v. State*, 191 Ga. App. 151, 153 (5) (381 SE2d 292) (1989). The purported waiver was conclusory and the court could not fulfil its duty without inquiry. It was error to exclude Rice from the proceeding.

We need not address whether the error was harmless. Violation of the right to be present at a critical stage of the proceedings under Art. I, Sec. I, Par. XII of the Georgia Constitution is not subject to harmless error analysis and requires reversal. *Goodroe*, supra at 381. Although Rice does not state he is relying on this provision of the Bill of Rights, he clearly is. See *Goodroe*, supra at 379-380 (1). His brief to this Court asserts the principle that he has the right to be present during all stages and cites *Wilson*, supra, which states the right is imbedded in current Art. I, Sec. I, Par. XII. He also cites *Williams v. State*, 251 Ga. 749, 798 (11) (312 SE2d 40) (1983), and *Gilreath v. State*, 247 Ga. 814, 824 (3) (279 SE2d 650) (1981), both of which rely upon *Wilson* for the right to be present. His implicit stand on the state constitutional ground is solid and requires reversal. *Goodroe*, supra at 381 (1).

Reversal requires a unique remedy, narrowly drawn to the facts of this case. Rice argues that he would not have testified at Wiley's trial if he had been properly advised by independent counsel, based on Fifth Amendment grounds, and that because he had already testified in Wiley's trial he was left with no practical alternative but to testify in his own trial. Although the evidence introduced on his motion for new trial did not include testimony that independent counsel would have advised Rice not to testify at Wiley's trial, or that Rice would have accepted such advice, it is reasonable to assume that such would have occurred because to do otherwise jeopardized Rice's defense. As noted above, we cannot consider the failure to be present during the hearing to be harmless error. Since Rice did not have independent counsel to advise whether or not to testify at Wiley's trial, his self-incriminating testimony at that trial cannot be introduced against him on his retrial.

2. Rice also contends, without avail, that the evidence was not sufficient to support the conviction under the standard in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), because evidence that he accepted City money that other officers had taken is

not evidence of theft by *taking*. The evidence is viewed with all reasonable inferences made, and all issues of weight and credibility resolved, in favor of the verdict. *Jackson v. Virginia*, supra; *Patterson v. State*, 181 Ga. App. 68, 69 (2) (351 SE2d 503) (1986).

A GBI investigator testified that a receipt book showed Rice had received $200 on one occasion and $220 on another that was not turned in to the City's treasury. Another GBI investigator testified Rice confessed to taking $2,000 that he had collected for probation payments. Umberhandt testified Rice had shared with him money Rice had taken from probation payments, as Umberhandt had done with money he had collected. Jarrell testified to the same effect. Rice himself testified he typically would keep fees charged for late payment of fines and on one occasion kept $50 of fine money. This evidence was sufficient to support a conviction of theft by taking.

3. Rice contends the court erred in sentencing him to pay restitution in the amount of $28,600 as a condition of the probated portion of his sentence. This figure reflects the total amount taken from the City of Baldwin by all police officers indicted and the court ordered that Rice was jointly and severally liable for the full amount. It is undisputed that the evidence showed Rice personally received no more than approximately $7,000.

A convicted criminal defendant may be ordered to pay restitution in an amount less than or equal to "the victim's damages." OCGA § 17-14-9. "'Damages' means all damages which a victim could recover against an offender in a civil action . . . based on the same act or acts for which the offender is sentenced." OCGA § 17-14-2 (2). In fulfilling its duty to ensure that the amount of restitution reflected the amount the victim could recover in a civil suit, see *Garrett v. State*, 175 Ga. App. 400, 404 (2) (333 SE2d 432) (1985), the court noted there was evidence Rice acted in concert with the other officers and concluded it was therefore appropriate to impose joint and several liability for the entire amount taken.

The question is not controlled by what civil verdict the evidence might have supported but by the crime for which Rice was sentenced. *Morrison v. State*, 181 Ga. App. 440, 441 (352 SE2d 622) (1987). The State alleged Rice was in a conspiracy with the other officers but he was acquitted of the RICO charge based upon conspiracy. He was sentenced only for theft by taking under OCGA § 16-8-12 (a) (2). Should retrial produce a restitution award it must be limited to that amount of money shown to have been taken by Rice.

4. Rice's remaining enumerations need not be addressed as they are unlikely to recur on retrial. One involves a jury charge not given but not requested by defendant and the other attacks the form of the verdict on a basis not urged at trial.

*Judgment reversed. McMurray, P. J., and Smith, J., concur.*

Decided June 11, 1997.
 Before Judge Woods.
*Cook & Connelly, Bobby Lee Cook, Jake Arbes*, for appellant.
*Michael H. Crawford, District Attorney*, for appellee.