A04A1935. SOUTHERN LAND TITLE, INC. et al. v. NORTH GEORGIA TITLE, INC.
(606 SE2d 43)

ELDRIDGE, Judge.

North Georgia Title brought suit for breach of contract, negligent title examination, fraud, and punitive damages against David M. Wallace and Southern Land Title, Inc. North Georgia Title also sought to have Southern Land Title, LLC[1] declared the successor in interest to Southern Land Title, Inc. and to pierce the corporate veil of both. After a jury trial, a verdict was returned in favor of North Georgia Title in the amount of $64,000 against Wallace and Southern Land Title, Inc. for breach of contract, negligent title examination, and fraud. North Georgia Title elected to have judgment entered on the fraud count. The jury also found that the corporate veil of Southern Land Title, Inc. and Southern Land Title, LLC had been pierced and that a verdict against one of the defendants would be a verdict against all three. The jury found that North Georgia Title was not entitled to punitive damages. Wallace, Southern Land Title, Inc., and Southern Land Title, LLC appeal from the denial of their motion for judgment notwithstanding the verdict or new trial. Finding no error, we affirm.

A contract for the sale of residential property located at 1375 Lorenzo Drive, Atlanta, Fulton County was entered into between Samuel Eudovique, as seller, and Kevin Miller, as purchaser. In order to effectuate the closing of the property, North Georgia Title requested Southern Land Title, Inc. to perform a title examination on the property. Wallace was the sole shareholder and officer of Southern Land Title, Inc. and employed five employees. Wallace initially

---

[1] Subsequent to the events leading to this lawsuit, Wallace moved to Myrtle Beach, South Carolina, and, on May 23, 2001, incorporated Southern Land Title, LLC for the purpose of providing title examinations in the State of South Carolina.

performed his title examination on November 9, 1998. At such time, the effective date of the records on file in Fulton County was September 15, 1998, and any documents filed after this date would not have shown up of record. In his title report, Wallace showed record title to be vested in Cynthia Matthew-Betts and showed, in addition to several fi. fas., two open deeds to secure debt on the property.

As the sales contract showed a different seller, North Georgia Title asked Wallace to recheck the deed records in Fulton County. Wallace rechecked the deed records and issued a second title report showing that record title was vested in Eudovique and listing the same exceptions to title that were shown in the first report.

As North Georgia Title prepared for closing, its employees found that the security deed given by Matthew-Betts in favor of Anekin Industries, which had been assigned to Cumberland Funding, remained open. After inquiry, Eudovique indicated that the loan had been satisfied and that he had the quitclaim deed from Cumberland Funding in his possession, which he had never recorded. Eudovique brought the Cumberland Funding quitclaim deed to closing on November 23, 1998, and it was recorded along with other documents executed at the closing in the deed records of Fulton County. At closing North Georgia Title, as agent for American Pioneer Title Insurance Company ("American Pioneer"), issued a policy of title insurance in favor of the purchaser's lender, SouthStar Funding, in the amount of $64,000. Such deed to secure debt was subsequently transferred to Ocwen Federal. Such title policy insured the period between the effective date and the date of closing (the "gap period") during which documents which could affect the title to the property could have been filed and recorded but which would not be indexed or available for inspection by anyone performing a title examination.

In June 2000, American Pioneer received a claim order from Ocwen Federal, claiming that the quitclaim deed from Cumberland Funding was a forgery and, as a result thereof, Cumberland Funding's deed to secure debt on the property had not been extinguished, which had resulted in Cumberland Funding foreclosing on its deed to secure debt on October 6, 1998, during the "gap period." American Pioneer notified North Georgia Title of the claim. Upon investigation, it was discovered that, at the time of closing, Eudovique was not the correct owner of the subject property. By warranty deed dated August 9, 1998, and recorded August 10, 1998, Eudovique transferred the subject property to Sam's Ventures, Inc. By subsequent quitclaim deed dated August 27, 1998, and recorded August 28, 1998, Eudovique on behalf of Sam's Ventures transferred the subject property to Janis A. Miles who remained the record owner at the time of closing. Both of these transfers were prior to the effective date of Wallace's title

6

report.[2] Based on this information, American Pioneer paid $64,000 to Ocwen Federal. *Held*:

1. Appellants allege that the trial court erred in failing to grant their motions for directed verdict and judgment notwithstanding the verdict on the common law fraud claim due to the absence of a tort because there was no evidence of damages.

> In determining whether the trial court erred by denying [the appellants'] motions for a directed verdict and motions for judgment n.o.v., this court must view and resolve the evidence and any doubt or ambiguity in favor of the verdict. A directed verdict and judgment n.o.v. are not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands a certain verdict.

(Citation and punctuation omitted.) *Irwin County v. Owens*, 256 Ga. App. 359, 360 (2) (568 SE2d 578) (2002).

In this case, North Georgia Title put up evidence of its actual damages. The evidence showed that North Georgia Title and American Pioneer entered into an Issuing Agency Contract by which North Georgia Title became an agent of American Pioneer for the purpose of issuing title insurance commitments, policies, and endorsements on its behalf. Under paragraph 6 B of the contract, North Georgia Title agreed to indemnify American Pioneer for any losses resulting from any errors or omissions in the abstracting or examination of titles by North Georgia Title, its employees, or its subcontractors. American Pioneer paid the purchaser's lender, Ocwen Federal, the sum of $64,000 and made demand upon North Georgia Title for reimbursement under the indemnification agreement between the parties. At the time of trial, North Georgia Title had not reimbursed American Pioneer. However, both parties testified that North Georgia is liable for the entire amount under the terms of the indemnity clause of the Issuing Agency Contract. Contrary to appellants' argument, the evidence was undisputed that American Pioneer made such payment, not because of the foreclosure which occurred within the "gap period" and to which North Georgia or Wallace would have no

---

[2] There was additional evidence that on the same date he conducted the title examination on the property subject to this lawsuit, Wallace conducted a separate title examination for North Georgia Title for property located at 995 Lena Street, Fulton County, to which Eudovique appeared in the chain of title. In the title examination report for the Lena Street property, Wallace set out a transfer of the property from Eudovique to Sam's Ventures. This conveyance of the Lena Street property was filed in the deed books immediately adjacent to the conveyance from Eudovique to Sam's Ventures on the property subject to this lawsuit, which was missed by Wallace.

liability, but because of a failure of title to vest in the purchaser due to Wallace missing the subsequent two conveyances of title after the conveyance of title into Eudovique. But for Wallace providing inaccurate information in his title examination report as to the record title holder, the closing never would have taken place, Eudovique would not have had the opportunity to provide either the fraudulent satisfaction of the Cumberland Funding deed to secure debt or the fraudulent conveyance of the subject property, and American Pioneer would not have issued a title insurance policy to the purchaser's lender. Because North Georgia submitted evidence of an actual loss sustained in the amount of $64,000, this enumeration is without merit.

2. In separate enumerations of error, appellants allege that the trial court erred in failing to grant their motions for directed verdict and judgment notwithstanding the verdict on the common law fraud claim due to the absence of a tort (1) as there was no evidence of scienter, (2) because the "gap period" foreclosure was the proximate cause of North Georgia Title's loss superseding all acts of appellants, and (3) because Eudovique's fraudulent release and false assurances of title were intervening criminal acts that broke the causal connection between appellants' acts and North Georgia Title's claimed loss. Appellants further allege that the trial court erred in failing to grant their motions for directed verdict and judgment notwithstanding the verdict on the piercing the corporate veil remedy because Wallace did not operate Southern Land Title, Inc. or Southern Land Title, LLC as his alter ego.

None of these issues was raised by appellants in their motion for directed verdict. "A motion for a directed verdict shall state the specific grounds therefor. A ground not mentioned in a motion for directed verdict cannot thereafter be raised on appeal." (Citation and punctuation omitted.) *Phillips v. Blankenship*, 251 Ga. App. 235, 237 (3) (554 SE2d 231) (2001); *Owens v. McGee & Oxford*, 238 Ga. App. 497, 500 (1) (d) (518 SE2d 699) (1999); *Leader Nat. Ins. Co. v. Kemp & Son, Inc.*, 189 Ga. App. 115, 116-117 (1) (375 SE2d 231) (1988). "The function of the requirement that the specific grounds be stated is to assure that the trial court has an adequate basis for its decision." (Citation and punctuation omitted.) Id. at 117.

In their motion for judgment notwithstanding the verdict, appellants raised the issue that North Georgia Title failed to show a false representation made with scienter and that the foreclosure was a superseding act which caused North Georgia Title's damages. However, grounds raised in a motion for judgment notwithstanding the verdict that were not raised in the motion for directed verdict will not be considered on appeal. *Dee v. Sweet*, 218 Ga. App. 18, 21 (2) (b) (460 SE2d 110) (1995).

OCGA § 9-11-50 (b) allows the device of a motion for judgment notwithstanding the verdict to be used when a motion for directed verdict does not end a trial and it proceeds to verdict. It is narrow, however, and does not permit reopening the case for new legal issues which are thought of retrospectively, with hindsight. It provides, however, a post-verdict opportunity for a determination of the legal questions raised by the motion for a directed verdict. If upon reflection the trial judge determines that the motion for directed verdict was valid, the judge is to set aside the verdict and the original judgment and enter a new judgment in accordance with the motion for directed verdict. It is patent, then, that the j.n.o.v. must be based on grounds raised in the motion for directed verdict initially, for it is in effect only a new ruling on a renewed motion.

(Citation and punctuation omitted.) Id.; *Famiglietti v. Brevard Med. Investors*, 197 Ga. App. 164, 166-168 (2) (397 SE2d 720) (1990); *Wehunt v. ITT Business Communications Corp.*, 183 Ga. App. 560-561 (1) (359 SE2d 383) (1987). Therefore, these enumerations of error present nothing for us to review.

*Judgment affirmed. Ruffin, P. J., and Adams, J., concur.*

DECIDED OCTOBER 7, 2004 — ▮▮▮▮▮▮▮

*Nations, Toman, Nutter & McKnight, David C. Nutter*, for appellants.

*Russell T. Bryant*, for appellee.