**FOURTH DIVISION**
**MCFADDEN, P. J.,**
**WATKINS and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.gov/rules**

**May 18, 2026**

# In the Court of Appeals of Georgia

A26A0679, A26A0680. BRONNER et al. v. HARDY et al.; and vice
versa.

WATKINS, Judge.

This appeal concerns a dispute between business partners Robert Hardy and

William Packer on the one hand (collectively, the "defendants,") and Bernard Bronner

on the other. All three are shareholders in Rainforest Production Holdings, Inc. For the

reasons discussed below, we conclude that neither Bronner, in his appeal from the final

judgment and subsequent denial of his motion for judgment notwithstanding the

verdict, nor the defendants, in their cross-appeal from a pretrial order denying their

motion to enforce a settlement agreement, have established that the trial court

committed reversible error. Consequently, we affirm.

Viewed in the light most favorable to the verdict,[1] the record shows that Rainforest, a film production company, was founded in 1996 by Hardy and Packer. Bronner became involved several years later when he invested in the company. Over time, disputes arose regarding repayment of Bronner's and other investors' funds. In 2010, the parties executed a "Reconciliation Agreement" to address those concerns. Rainforest was dissolved four years later, in 2014, at which point Bronner owned 30.8 percent of the company's shares, Hardy owned 32.1 percent, Packer owned 31.5 percent, and 14 others owned the remaining shares. Bronner later filed suit against Hardy, Packer, and, nominally, Rainforest itself, raising direct and derivative claims as a shareholder of the company.

One of Bronner's claims was a shareholder derivative claim for breach of contract based on Section 2.3 of the Reconciliation Agreement, which described how Rainforest would be compensated when Hardy and Packer worked on projects for outside entities.[2] As relevant to this appeal, Bronner alleged that Packer's work on

---

[1] See *Fassnacht v. Moler*, 358 Ga. App. 463 (855 SE2d 692) (2021).

[2] Section 2.3 provides:
***Compensation for Single Contractor Core Business Projects***. With respect to any Core Business Project with a third party for which (1) the personal services of only one of Hardy or Packer are contracted on an

three movies — *Think Like a Man*, *Ride Along*, and *About Last Night* — fit within the

---

individual basis (as opposed to the services of Rainforest Films or another Rainforest Productions operating entity per se) for the project (such contracted individual referred to herein as the "***Contractor***"), (2) the other individual is not so contracted or is engaged and paid on a separate basis for personal services that are not part of the Core Business of Rainforest Productions, and (3) *the name or assets of Rainforest Films or another Rainforest Productions operating entity are nonetheless to be used in the project* (each such project, a "***Single Contractor Project***"), any compensation in connection with such Single Contractor Project shall be allocated and paid in the following manner:

(a) Any compensation that is a "front-end payment" with respect to such project, regardless of the time the payment is actually delivered, shall be allocated such that fifty percent (50%) is paid directly to Rainforest Films, and fifty percent (50%) is paid directly to the Contractor or his personal holding company or other designee; and

(b) Any compensation that is a "back-end payment" with respect to such project, regardless of the time such payment is actually delivered, shall be allocated such that ninety percent (90%) is paid directly to Rainforest Films, and ten percent (10%) is paid directly to the Contractor or his personal holding company or other designee.

(c) If any compensation is paid or delivered as an initial matter in a manner that is inconsistent with the requirements of this ***Section 2.3***, the recipient of such initial payment shall promptly (and in any event, within fourteen (14) days following its receipt of such payment) cause the appropriate amount thereof to be delivered to the ultimate recipient as specified in this ***Section 2.3***. (Emphasis added).

In the "Recitals" section of the Agreement, Rainforest's "Core Business" was described as "its feature film, television and other motion picture business activities[,]" while its "Core Business Projects" were described as including "all projects that are part of its Core Business[.]"

scope of Section 2.3 and that Packer failed to give Rainforest its share of payment for those projects.

Both Bronner and Packer moved for summary judgment on the Section 2.3 claim, but the trial court concluded that genuine disputes of material fact prevented it from granting either motion. Specifically, the trial court found that a jury had to determine whether Rainforest's name or assets were used in the projects such that they came within the scope of Section 2.3.[3]

At trial, Packer defended against Bronner's claim as to *Think Like a Man* by presenting evidence that all proceeds for that project were paid to Rainforest. Packer defended against Bronner's claim as to *Ride Along* and *About Last Night* by arguing that those projects did not fall within the scope of Section 2.3. In this vein, Packer testified that none of Rainforest's assets were used to make these films and that Rainforest's name was listed in these movies' credits merely as a gratuitous "vanity credit." He

---

[3] The trial court observed that Section 2.3, by its terms, appears to apply only to projects for which there was an understanding at the beginning of the project that the project would be completed using Rainforest's name and assets. The trial court further noted that, as to these three projects, there was evidence that Rainforest's only involvement was being "gifted" a "vanity credit" after the projects were completed.

also presented expert testimony explaining that a "vanity credit" is given as a gift to help the credited entity build its reputation.

After the close of evidence, Bronner moved for a directed verdict on several claims, including liability and damages for the Section 2.3 claim. The trial court denied the motion and ruled that the case had to be resolved by the jury.

The jury found in favor of Bronner on his Section 2.3 claim against Packer and awarded him $375,000. The jury also awarded Bronner $4,500 on a breach of contract claim relating to another provision of the Reconciliation Agreement. On all other claims and counterclaims, including the parties' competing claims for attorney fees, the jury found against the respective claimants and determined that no award was warranted.

The trial court entered a final judgment in accordance with the jury's verdict, and Bronner then filed a "Post-Trial Motion for Costs and Fees," arguing that because the jury returned a verdict in his favor on the Section 2.3 claim, he was entitled to attorney fees under Section 3.4. Bronner also filed a motion for judgment notwithstanding the verdict ("JNOV"), arguing that no reasonable jury could have found a breach of the Reconciliation Agreement yet also denied an award of attorney

fees under Section 3.4 of that Agreement. The trial court denied the motions, concluding that Bronner's failure to include Section 3.4 attorney fees in his motion for directed verdict precluded him from obtaining a JNOV on this issue. In its order addressing both motions, the court opined that Bronner's argument regarding Section 3.4 appeared to be "an afterthought to the trial." The court noted that, in addition to failing to raise the Section 3.4 argument in his motion for directed verdict, Bronner also did not mention the provision in his closing argument, did not request a corresponding jury instruction, and did not ask for the provision to be identified on the jury's verdict form — even though the parties had stipulated that the jury would determine whether any attorney fee award was merited and the verdict form specifically asked the jury to determine whether Bronner was "entitled to an award of attorney fees from Defendant Packer[.]" These appeals ensued.

*Case No. A26A0679*

1. In related claims of error, Bronner contends he was entitled to a judgment of approximately $3.5 million on his Section 2.3 claim. We conclude, however, that Bronner has failed to show any basis for reversal.

6

First, Bronner asserts that the trial court erred in denying his motion for summary judgment on his Section 2.3 claim. But Georgia law is clear that "an appellate court does not review the denial of summary judgment once a case is tried. Instead, the appellate court reviews the sufficiency of the evidence in the light most favorable to the jury's verdict."[4]

Second, Bronner argues that the trial court erred in denying his motion for directed verdict on this claim.

> A directed verdict is proper only if there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict. In determining whether any conflict in the evidence exists, the court must construe the evidence most favorably to the party opposing the motion for directed verdict. The standard used to review the grant or denial of a directed verdict is the any evidence test. The question before this [C]ourt is not whether the verdict and the judgment of the trial court were merely authorized, but whether a contrary judgment was demanded.[5]

---

[4] *Cawley v. Bennett*, 293 Ga. App. 46, 47(1) (666 SE2d 438) (2008) (citation and punctuation omitted). See also *City of College Park v. City of Sandersville*, 361 Ga. App. 529, 531(1) (864 SE2d 680) (2021) ("Because the legal issue raised and resolved in denying the motion for summary judgment was considered at trial, [the] motion for summary judgment is moot.") (citation and punctuation omitted).

[5] *Brock v. King*, 279 Ga. App. 335, 337(1) (629 SE2d 829) (2006) (citation and punctuation omitted).

"[B]ecause jurors are the sole and exclusive judges of the weight and credit given to the evidence, we must construe the evidence with every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict."[6] And, as a general rule, "[t]he issue of damages is a matter for the jury, and a reviewing court should not interfere with the jury's damages award unless it is so small or excessive that it justifies an inference of gross mistake or undue bias."[7]

Here, the jury found in Bronner's favor on the Section 2.3 claim, but it awarded him only $375,000, which was far less than he was seeking. On appeal, Bronner asserts that he should have been awarded $3,500,310.90 for *Think Like a Man*, *Ride Along*, and *About Last Night*. Notably, this is more than the amount of damages Bronner attributed to those projects in his closing argument.

As support for his calculation of damages on appeal, Bronner points, without specificity, to 80 pages in the record concerning *Think Like a Man*, 108 pages

---

[6] *Old Republic Nat'l Title Ins. Co. v. RM Kids*, 337 Ga. App. 638, 648(5) (788 SE2d 542) (2016) (citation and punctuation omitted.)

[7] *Green v. Proffitt*, 248 Ga. App. 477, 478(1) (545 SE2d 623) (2001) (citing OCGA § 13-6-4).

concerning *Ride Along*, and 29 pages concerning *About Last Night* — a combined 217 pages of "producer agreements," bank statements, and other financial documents, which, according to Bronner, establish the payments owed for each project. But Bronner does not address the conflicting evidence at all, including Packer's testimony that all proceeds for *Think Like a Man* had already been paid to Rainforest. And Bronner's own calculations have changed throughout the case; during closing arguments, he contended that shareholders experienced $3,408,430.20 in damages for the defendants' breaches of Section 2.3 with respect to these projects. Under these circumstances, Bronner has not shown that the evidence, viewed in the light most favorable to Packer, demanded an award in line with his current calculations. Accordingly, this claim of error fails.

2. Bronner argues that the trial court erred in denying his motion for judgment notwithstanding the verdict ("JNOV"). He contends that because the jury found in his favor on his breach of contract claim, he was entitled to attorney fees as a matter of law under Section 3.4 of the Reconciliation Agreement, which provided, generally, that Packer and Hardy would "indemnify" Bronner for any losses he incurred as a

result of them breaching the Agreement — "including costs and reasonable attorney fees[.]"

The trial court concluded that Bronner could not raise this issue in a motion for JNOV because he did not raise it in his motion for directed verdict. We agree. It is well-established that a motion for JNOV "must be based on grounds raised in the motion for directed verdict initially, for it is in effect only a new ruling on a renewed motion."[8] Bronner did not argue in his motion for directed verdict that if he prevailed on his Section 2.3 claim, he would necessarily be entitled to attorney fees under Section 3.4 of the Reconciliation Agreement.

3. Bronner contends the trial court erred in allowing Hardy's defenses of accord and satisfaction to go the jury because they were not identified in the consolidated pretrial order. When Bronner raised this argument in his motion for directed verdict, Packer responded that he had not raised an affirmative defense of accord and satisfaction but had, instead, simply argued that Bronner failed to establish that he

---

[8] *James E. Warren, M.D., P.C. v. Weber & Warren Anesthesia Servs., LLC*, 272 Ga. App. 232, 234-235 (1) (612 SE2d 17) (2005) (citation and punctuation omitted). Accord *S. Land Title, Inc. v. North Georgia Title, Inc.*, 270 Ga. App. 4, 7-8(2) (606 SE2d 43) (2004).

breached the Reconciliation Agreement — specifically, Packer asserted he had presented evidence that all proceeds for *Think Like a Man* were paid to Rainforest.[9] The record supports Packer's position, and Bronner has not pointed to anywhere at trial where Packer raised such an affirmative defense. We discern no error in the trial court's ruling on this issue.

*Case No. A26A0680*

4. In their cross-appeal, the defendants challenge the trial court's pretrial order denying their "Motion for Approval of Settlement Agreement." We review the trial court's decision on such a motion for abuse of discretion,[10] and we find no basis for reversal in this case.

The settlement agreement was signed by Hardy and Packer on the one hand and by Rainforest on the other; the signatories were Hardy, Packer, Lisa Vash Herman (as authorized signatory for the disinterested shareholders), and Terree A. Wakefield (Trustee of the Rainforest Liquidation Trust). It was executed in November 2023, a

---

[9] See OCGA § 13-4-101 ("Accord and satisfaction occurs where the parties to an agreement, by a subsequent agreement, have satisfied the former agreement, and the latter agreement has been executed.").

[10] See *Goldstein v. Wells*, 295 Ga. App. 870, 870 (673 SE2d 325) (2009); *Stephens v. McGarrity*, 290 Ga. App. 755, 761(2)(a) (660 SE2d 770) (2008).

few months after the trial court entered partial summary judgment on several claims and about a month before trial was scheduled to begin on the remaining claims — including shareholder derivative claims against Hardy and Packer alleging that they breached their fiduciary duties, misappropriated corporate opportunities, wasted corporate assets, and breached Section 2.3 of the Reconciliation Agreement. Under the terms of the agreement, Hardy and Packer would pay $250,000 to Rainforest in exchange for being fully released from liability for any losses, and Rainforest would thereafter be permitted to resume distributing residual payments to its shareholders. The defendants recognized that the settlement could take effect only with approval from the court, and they asserted, in their motion, that a majority of shareholders who were not parties to the lawsuit had voted to accept the settlement agreement.

Bronner opposed the defendants' motion to approve the settlement agreement, arguing, essentially, that the proposal was not made in good faith and that its terms would be substantively unfair to Rainforest's shareholders. He asserted that he had not been involved in the settlement negotiations, pointed out that the non-party shareholders who had consented to the agreement collectively owned less than four percent of the company, and contended that he expected to be able to prove millions

of dollars in damages at trial. Bronner also averred that he had incurred significant expenses in litigating the claims to that point, and he noted that the settlement agreement did not contemplate reimbursing him for those expenses.

In its order denying the motion, the trial court rejected the defendants' contention that the settlement should be analyzed solely under OCGA § 14-2-745, which concerns discontinuance or settlement of a derivative proceeding brought in the name of a corporation, and concluded that the situation also implicated OCGA § 14-2-744, which concerns dismissal of a derivative proceeding. Ultimately, the trial court determined that the defendants had not established that the non-party shareholders' decision to approve the settlement was the result of a reasonable investigation, and it denied the motion.

OCGA § 14-2-745 concerns settlements of derivative actions brought on behalf of a corporation. It provides that

> [a] derivative proceeding may not be discontinued or settled without the court's approval. If the court determines that a proposed discontinuance or settlement will substantially affect the interests of the corporation's shareholders or a class of shareholders, the court shall direct that notice be given to the shareholders affected.

OCGA § 14-2-744 is, as we have previously recognized, a "more general provision governing dismissals of derivative actions[.]"[11] In accordance with this provision, a trial court "may dismiss a derivative proceeding" if the court finds that an independent body or individual "has made a determination in good faith after conducting a reasonable investigation … that the maintenance of the derivative suit is not in the best interests of the corporation."[12]

---

[11] *Stephens*, 290 Ga. App. at 760(2)(a).

[12] OCGA § 14-2-744 (a). In full, the statute provides as follows:

> (a) The court may dismiss a derivative proceeding if, on motion by the corporation, the court finds that one of the groups specified in subsection (b) of this Code section has made a determination in good faith after conducting a reasonable investigation upon which its conclusions are based that the maintenance of the derivative suit is not in the best interests of the corporation. The corporation shall have the burden of proving the independence and good faith of the group making the determination and the reasonableness of the investigation.
> (b) The determination in subsection (a) of this Code section shall be made by: (1) A majority vote of independent directors present at a meeting of the board of directors if the independent directors constitute a quorum; (2) A majority vote of a committee consisting of two or more independent directors appointed by a majority vote of independent directors present at a meeting of the board of directors, whether or not such independent directors

14

On appeal, the defendants contend that the trial court erred by allowing OCGA § 14-2-744 to inform its decision on their motion to enforce the settlement agreement. We disagree. Nothing in Section 745 purports to restrict the trial court to considering only certain factors when deciding whether to approve a proposed settlement agreement. And in *Stephens v. McGarrity*, where our Court reviewed a trial court's order approving a settlement agreement that resulted in an order of dismissal, we considered not only Section 745 but also Section 744 to determine whether the trial court abused its discretion in approving the settlement.[13] With the guidance of *Stephens*, we reject the defendants' position that the trial court was not authorized to

---

constitute a quorum; or (3) A panel of one or more independent persons appointed by the court upon motion by the corporation.

(c) None of the following shall by itself cause a director to be considered not independent for purposes of subsection (b) of this Code section: (1) The nomination or election of the director by directors who are not independent; (2) The naming of the director as a defendant in the derivative proceeding; or (3) The fact that the director approved the action being challenged in the derivative proceeding so long as the director did not receive a personal benefit as a result of the action.

[13] 290 Ga. App. at 759-61(2).

consider the factors listed in Section 744 when evaluating the settlement agreement in this case.

The defendants further contend that the trial court abused its discretion by denying their motion to enforce the settlement, insisting that the proposal was fair and adequately protected the interests of Rainforest and its shareholders. But under the circumstances of this case, we discern no abuse of discretion in the trial court's conclusion. As the trial court emphasized in its order, the shareholders who approved the agreement owned only a small portion of the company and Bronner was not given a meaningful opportunity to present the claims and expected damages to those shareholders before the vote occurred. Additionally, the settlement agreement was crafted by Packer and Hardy — the two individuals who were facing possible liability on the claims that would be dismissed. In light of these facts, along with the other circumstances of the case, we discern no error in the trial court's decision not to approve the settlement agreement.

*Judgments affirmed. McFadden, P. J., and Padgett, J., concur.*

16