**FOURTH DIVISION
MCFADDEN, P. J.,
WATKINS and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**June 22, 2026**

# In the Court of Appeals of Georgia

A26A0228.  YAMAHA  MOTOR  MANUFACTURING CORPORATION OF AMERICA v. HALL et al.

MCFADDEN, Presiding Judge.

Yamaha Motor Manufacturing Corporation of America appeals from the judgment entered on the jury verdict in favor of Elizabeth Hall in this personal-injury, product-liability action involving a golf cart rollover. Yamaha argues that the trial court erred by prohibiting it from introducing the specific language used in the warning labels it affixed to the golf cart. (The parties and the trial court referred to this as the "contents" of the warnings, and we will do the same.) We agree that the trial court erred and so reverse.[1]

---

[1] Oral argument was held in this case on January 20, 2026, and is archived on the court's website. See Court of Appeals of Georgia, Oral Argument, Case No. A 2 6 A 0 2 2 8 ( J a n u a r y 2 0 , 2 0 2 6 ) , a v a i l a b l e a t

1. *Background*

Three-year-old Suzanne Hall was a passenger in a golf cart driven by her father, Brooks Hall, on a street in their neighborhood.[2] When the automobile driving in front of them stopped, Brooks Hall applied the golf cart's brakes. The rear wheels of the golf cart locked up. The golf cart spun and rolled over onto its side, trapping the girl between the road and the golf cart. She suffered extensive injuries as a result.

Appellant Yamaha manufactured the golf cart, which was leased to a golf course for more than four years. When the lease ended, the golf cart was sold to an authorized dealer. At some point Colton Isyk purchased the golf cart, although he could not recall from whom. When he purchased the golf cart, he did not receive an operator's manual. He did not recall seeing any warning labels affixed to the golf cart, but, in any event, he did not remove any.

Isyk modified the golf cart by adding a rear-facing seat (where Suzanne Hall was sitting before the rollover), installing a lift kit, installing lights, and installing larger tires. He sold the modified golf cart to Brooks Hall. When Brooks Hall purchased it,

https://vimeo.com/1157066885?fl=tl&fe=ec.

[2] In the record, the vehicle at issue is referred to as both a golf car and a golf cart. We will refer to the vehicle by the more common name, golf cart.

the golf cart had no safety warning labels attached to it, and Isyk did not give him an operator's manual.

Elizabeth Hall, Suzanne Hall's mother, filed this action against Yamaha and others (all of whom had been dismissed by the time of trial) for Suzanne Hall's injuries. She alleged claims for strict liability, negligence, and negligence per se for a design defect and for failure to warn of the dangers of using the golf cart. She alleged that the rollover was caused by the fact that the golf cart only had brakes on the two rear wheels.

The jury returned a verdict in Hall's favor for $7 million. After the trial court denied its motion for new trial, Yamaha filed this appeal.

2. *Exclusion of evidence of Yamaha's warnings*

Yamaha argues that the trial court erred by refusing to allow it to introduce into evidence the contents of its warning labels, which, it says, were critical to the jury's application of the risk-utility analysis when considering Hall's claim of a design defect. We agree.

(a) *Legal background*

3

In *Banks v. ICI Ams.*, 264 Ga. 732 (450 SE2d 671) (1994), our Supreme Court held that deciding whether a product's design was defective requires the "utilization ... of a balancing test whereby the risks inherent in a product design are weighed against the utility or benefit derived from the product." Id. at 734(1). The court held that the balancing test — or risk-utility analysis — "incorporates the concept of 'reasonableness,' i.e., whether the manufacturer acted reasonably in choosing a particular product design, given the probability and seriousness of the risk posed by the design, the usefulness of the product in that condition, and the burden on the manufacturer to take the necessary steps to eliminate the risk." Id.

The court "set forth ... a non-exhaustive list of general factors" the trier of fact may consider in design-defect cases when conducting the risk-utility analysis by "balancing the risks inherent in a product design against the utility of the product so designed[.]" Id. at 735, 736(1) n. 6. One of the factors the trier of fact may consider is "the avoidability of the danger, i.e., the user's knowledge of the product, publicity surrounding the danger, or the efficacy of warnings, as well as common knowledge and the expectation of danger[.]" Id. at 736(1) n.6.

(b) *Waiver*

Hall argues that Yamaha waived the argument regarding warnings as relevant to the risk-utility analysis by never presenting it to the trial court and by affirming to the court that it did not seek to admit the contents of the warnings for that purpose. We hold that Yamaha did not waive the argument.

In the year before the trial, Yamaha moved for partial summary judgment on Hall's failure-to-warn claim. It argued that because it was undisputed that Brooks Hall had not read the warning labels or the operator's manual — because the labels were not affixed to the golf cart and Brooks Hall was not given the manual at the time he bought the golf cart from Isyk — the adequacy of the contents of the warnings could not be a proximate cause of Suzanne Hall's injuries. The trial court granted Yamaha's motion to the extent Hall's claim was based on the adequacy of the contents of the warning, but denied it to the extent that Hall's claim was based on an alleged failure to effectively communicate the warning.

Given the trial court's summary judgment ruling, Hall then filed a motion in limine to prohibit Yamaha from "argu[ing] that [it] warn[s] customers or what [it] specifically warn[s]." Yamaha opposed the motion, arguing that such evidence was "highly probative of whether [Yamaha] was negligent by failing to adequately

5

communicate a warning to an ultimate user." It did not specifically raise the issue of the relevance of the warning in the context of a risk-utility analysis.

The trial court conducted a hearing on the parties' motions in limine. Regarding the motion to exclude the contents of warnings, counsel for Hall argued "warnings content out, warnings delivery in." Counsel for Yamaha argued that the trial court should deny the motion because such a ruling in limine would limit Yamaha from defending Hall's claim regarding its efforts to deliver and communicate safety information and warnings. Hall's attorney responded, "[P]erhaps the way to craft that is exactly that. Granted as to content out, delivery in. Denied as to the balance." Yamaha's attorney said she did not disagree. The trial court "adopt[ed Hall's attorney's] language … that any evidence as to the content of the warnings is out, but evidence as to Yamaha's delivery of those warnings is in." Neither party objected.

But the issue came up again after Hall's counsel made his opening statement. Yamaha's counsel moved the court to allow Yamaha to introduce evidence about the contents of the warnings, because, he contended, it was clear from the opening statement that Hall would frame the product's defect as the two-wheel braking system's inability to handle fast speeds when the golf cart was going down slopes, a

risk that Yamaha explicitly warned about in the warning labels and operator's manual. Counsel argued that by framing the defect as she had, Hall had opened the door to allowing Yamaha to inform the jury that it does warn operators to go slowly down slopes. He clarified that the warnings were "not relevant to a warnings issue [but were] *relevant to the primary issue in the case, which is whether this golf car was defective or not*[,] because we have to be able to prove to the jury what the intended uses of the product are. So *it's relevant to their defects theory.*" (Emphasis added.)

The court ruled that Yamaha could "say that there were, in fact, warning labels and stickers placed on the golf cart [but] any reference to the content of those labels is out." Yamaha then made a proffer that the warning label on the dashboard stated, "drive slowly straight up and down slopes" and the operator's manual stated "drive slowly straight up or straight down slopes."

The next week of the trial, before Yamaha called its second witness, Yamaha's counsel asked the court to "reconsider its ruling that [excluded] the evidence regarding the on-product label and the operator's manual in regard to the instruction to drive straight, slowly up and down hills, *which goes directly to what plaintiffs are claiming in regard to the defect of the product. ...*" (Emphasis added.) She also argued that

the evidence was admissible to rebut Hall's claim for punitive damages. Counsel argued that even if the evidence were "inadmissible on the warnings claim, it ... doesn't preclude it from being admissible for other purposes." The trial court declined to reconsider the ruling.

So Yamaha moved for a mistrial, arguing that it could not "get a fair trial without being able to present this evidence for all of the reasons ... already stated." The trial court denied the mistrial motion, mistakenly stating, "[W]e're in this position because you asked me to exclude the content of the warning, which I did." (In fact, it was Hall who moved in limine to exclude the contents of the warnings, given Yamaha's summary judgment.)

As detailed above, at least twice Yamaha sought the admission of the contents of its warnings on the ground that the warnings were, as counsel argued, "relevant to the primary issue in the case, which is whether this golf car was defective[.]" "Trial counsel was not required to use the specific phrase ['risk-utility analysis'] — which seems to be [Hall's] contention on appeal — to lodge a specific objection on that ground." *Mitchell v. State*, 307 Ga. 855, 860(2)(a) (838 SE2d 847) (2020). See *Brown v. State*, 367 Ga. App. 114, 115 (885 SE2d 87) (2023) ("there are no magic words that

are needed to make a proper objection"). So we conclude that Yamaha did not waive this argument.

(c) *Exclusion of the contents of the warnings*

Yamaha argues that the contents of the warnings were admissible, relevant evidence, so the trial court erred by refusing to allow their admission. We agree.

As detailed above, our Supreme Court has held that one of the factors the trier of fact may consider in design-defect cases when "balancing the risks inherent in a product design against the utility of the product so designed[]" is "the avoidability of the danger, i.e., the user's knowledge of the product, publicity surrounding the danger, or the efficacy of warnings, as well as common knowledge and the expectation of danger[.]" *Banks*, 264 Ga. at 736(1) n. 6. Indeed, consistent with this holding, the trial court instructed the jurors on the risk-utility analysis, informing them that they

> must decide whether the manufacturer acted reasonably in choosing a particular product design by considering all relevant evidence, including the following factors: ... the avoidability of the danger considering the user's knowledge of the product, publicity surrounding the danger, the effectiveness of the warnings and common knowledge or the expectation of danger. ...

The contents of Yamaha's warnings were relevant to the jurors' analysis. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA § 24-4-401. And relevant evidence is generally admissible. OCGA § 24-4-402. "The standard for relevance is a liberal one, and relevant evidence is admissible even if it has only slight probative value." *Wilson v. State*, 315 Ga. 728, 738(8) (883 SE2d 802) (2023) (citation modified).

The contents of the warnings provided by Yamaha were certainly relevant because, as detailed above and as the trial court instructed the jury, our Supreme Court has established that one of the factors the trier of fact may consider when applying the risk-utility analysis is "the efficacy of warnings." *Banks,* 264 Ga. at 736 n. 6(1). See *Boyce v. Gregory Poole Equip. Co.*, 269 Ga. App. 891, 898(1)(c) (605 SE2d 384) (2004) ("adequate warnings as to the proper or safe use of a product are part of the total design package of the product"); *Bryant v. Hoffmann-La Roche, Inc.*, 262 Ga. App. 401, 409(4) (585 SE2d 723) (2003) (physical precedent only) (reversing grant of summary judgement to drug manufacturer on claim for design defect because,

among other things, plaintiff presented evidence that warnings contained in the package insert were inadequate).

The evidence was particularly relevant because in opening statement, Hall's attorney characterized Yamaha's design choices as "callous." The contents of the warnings would have been evidence from which the jury could conclude that Yamaha did not disregard the risk when making its design choices.

And although the contents of the warnings may not have been admissible for purposes of Hall's failure-to-warn claim, since Brooks Hall did not read any warnings, "evidence inadmissible for one purpose may be relevant and admissible for another purpose." *Central of Ga. R. v. Ross*, 342 Ga. App. 27, 37(3) (802 SE2d 336) (2017) (citation modified).

Hall argues that any error in excluding the contents of the warnings was harmless, because the contents of the warnings were cumulative of testimony of Yamaha's corporate representatives and an expert witness regarding the intended use of the golf cart. But testimony concerning Yamaha's intended use of the golf cart does not touch on the issue of Yamaha's attempt to communicate "the avoidability of the danger" in light of the efficacy of its warning. *Banks*, 264 at 736(1), n. 6.

We cannot say that the trial court's error in excluding this evidence was harmless. So we reverse.

3. *Failure to warn*

Yamaha argues that the trial court erred by denying its motion for directed verdict on Hall's communication-based failure to warn claim, because it owed no duty to ensure that the warning labels and operator's manual remained with the golf cart through its product life cycle. We hold that Yamaha has not preserved this argument because it failed to raise it below.

In Hall's second amended complaint, she alleged that Yamaha owed a duty "to warn and adequately communicate warnings about foreseeable damages from foreseeable uses of its product[,]" and that it failed to so warn. The trial court denied Yamaha's motion for summary judgment on Hall's failure-to-warn claim to the extent it was based on a claim for failure to effectively communicate the warning.

At the close of Hall's case at trial, Yamaha moved for a directed verdict on this claim based on "the adequacy of the communication of the warning." It argued that Hall failed to present evidence on the adequacy of its communication and on proximate cause. Focusing on the adequacy of the communication of the warning,

Yamaha argued that Hall had not presented evidence of an "alternative that was unreasonable for [Yamaha] not to employ and ... [that such an alternative] would ... have actually made a difference in this case." Although Yamaha stated that once it sells a golf cart, "it is beyond the control of" Yamaha, it never argued that it had no duty; it did not mention duty at all. The court denied the motion.

After the close of evidence, Yamaha again moved for a directed verdict. As for the failure to communicate a warning, it argued generally that it moved for a directed verdict on "the *breach* of duty as well as to the proximate cause[,]" (emphasis added), but it did not argue the absence of a duty. Instead, it specifically argued that Hall had not presented evidence that a pick-proof warning label was feasible at the time the golf cart was manufactured.

Yamaha did not argue at either point that it had no duty to ensure that its warning labels and operator's manual were not removed from the golf cart. Indeed, in its appellate brief, Yamaha itself describes the grounds of its directed verdict motions as Hall's failure to present evidence that Yamaha's placement and location of its warning labels were inadequate or that its warning labels rendered the golf cart unreasonably unsafe.

"A motion for a directed verdict shall state the specific grounds therefor."

OCGA § 9-11-50(a). "By the great weight of authority, one appealing the denial of a

motion for directed verdict may not raise for the first time on appeal a ground not

specifically raised in the original motion." *Johnson v. Hensel Phelps Constr. Co.*, 250 Ga.

83, 84 (295 SE2d 841) (1982). "The function of the requirement that the specific

grounds be stated is to assure that the trial court has an adequate basis for its

decision." *S. Land Title v. N. Ga. Title*, 270 Ga. App. 4, 7(2) (606 SE2d 43) (2004)

(citation modified).

Yamaha did not argue when it moved for directed verdict the "specific

grounds" that it had no duty to ensure that the warning labels and operator's manual

remained with the golf cart. Therefore, it has not preserved this argument for appeal.

*Leader Nat'l Ins. Co. v. Kemp & Son*, 259 Ga. 329, 331 (380 SE2d 458) (1989) ("A

motion for directed verdict must state *with specificity* the grounds on which it is

based." (emphasis added)); *Phillips v. Blankenship*, 251 Ga. App. 235, 237(3) (554

SE2d 231) (2001).

4. *Failure to instruct the jury on Yamaha's modification defense*

Yamaha argues that the trial court erred in failing to instruct the jury on its modification defense. See *Talley v. City Tank Corp.*, 158 Ga. App. 130, 135(3) (279 SE2d 264) (1981) ("One of the conditions for imposition of strict liability against a manufacturer of defective products is that the product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold."(citation modified)). Hall counters that Yamaha never requested such a charge and did not object at the conclusion of the court's instructions, and so waived any alleged error. But see OCGA § 5-5-24(c) ("[T]he appellate courts shall consider and review erroneous charges where there has been a substantial error in the charge which was harmful as a matter of law, regardless of whether objection was made hereunder or not."); *Maki v. Real Estate Expert Advisors*, 358 Ga. App. 337, 341(1) (855 SE2d 72) (2021).

We do not reach this enumeration because "the propriety of jury charges at a second trial will be determined at that time." *Holt v. State*, 352 Ga. App. 504, 511(3) (835 SE2d 336) (2019). See also *Rice v. State*, 226 Ga. App. 770, 774(4) (487 SE2d 517) (1997) (declining to address enumeration regarding a jury charge not given but not

requested by defendant as it was unlikely to recur on retrial); *Jones v. Lowman*, 85 Ga. App. 743, 746-47(3) (70 SE2d 122) (1952).

5. *Apportionment*

Before trial, the trial court denied Yamaha's motion in limine to allocate fault to non-parties, the parties who had been dismissed prior to trial, although she allowed the jury to indicate the non-parties' percentages of fault on the verdict form. The jury allocated 51 percent fault to Yamaha, 44 percent fault to Brooks Hall, and 5 percent fault to Isyk, the person who sold the golf cart to Brooks Hall. In accordance with the earlier ruling, the court entered the $7 million judgment solely against Yamaha.

In light of this, Yamaha invites us to revisit our holding in *AU Med. Ctr. v. Dale*, 373 Ga. App. 521, 530(1)(c) (908 SE2d 790) (2024), in which a plurality of this court held that "the term 'brought,' as used in [a] former version of [the apportionment statute,] OCGA § 51-12-33 (b)[(2005)], refers … to the number of named defendants remaining in the case at the time of trial." We decline that invitation.

*Judgment reversed. Watkins and Padgett, JJ., concur.*